ADELAIDE HAMMOND, ADMINISTRATRIX, ETC., V. THE CHICAGO & GRAND TRUNK RAILWAY COMPANY.

*Negligence—Railroad companies—Injury to section employé—Fellow-servants—Contributory negligence—Evidence.*

1. Without deciding whether, under all circumstances, a section foreman must be considered as a fellow-servant of the men working under him, so as to relieve the common employer from liability for his negligence, it is very clear that where, as in this case, the sole act of negligence relied on is participated in, and voluntarily consented to, by the injured workman, with full knowledge of the peril, the question of the master's liability does not arise.

So *held*, where the negligence charged was that, with knowledge of an approaching train, the section foreman continued to propel a hand-car along a curved portion of the track running through a deep cut without sending a lookout ahead to give warning, in which conduct the injured workman participated with full knowledge of the hazard, he having been running up and down the same section daily for three months, and it not appearing that he was acting under the express orders of the

foreman in remaining on the car, or that he remained thereon against his will.

2. In such a case evidence that the foreman was intemperate to an extent which made him an unsafe and unfit man for his position is irrelevant, it not being claimed that he had been drinking, or was under the influence of liquor, on the day of the accident.

Error to Ingham. (Peck, J.) Submitted on briefs October 31, 1890. Decided November 21, 1890.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Frank L. Dodge* (*C. P. Black,* of counsel), for appellant, contended:

1. The jury are to decide all questions of fact where different inferences might be drawn or different conclusions reached by different individuals; citing *Mining Co. v. Brady,* 16 Mich. 332; *Teipel v. Hilsendegen,* 44 Id. 461; *Spicer v. Bonker,* 45 Id. 630; *Marcott v. Railroad Co.,* 47 Id. 1.

2. A trial judge should never take a case from the jury on the evidence unless it is very clear, and when he does so he should specify the particular ground or grounds of his ruling; citing *Conely v. McDonald,* 40 Mich. 150; *Demill v. Moffatt,* 45 Id. 410; *Marcott v. Railroad Co.,* 47 Id. 1; *Goodale v. Bridge Co.,* 55 Id. 413; *People v. Eaton,* 59 Id. 559; *Carver v. Plank-road Co.,* 61 Id. 584; *Stockham v. Cheney,* 62 Id. 10; *Gibbons v. Farwell,* 63 Id. 344; *Manf'g Co. v. Car Co.,* 65 Id. 564; *Charon v. Lumber Co.,* 66 Id. 68; *Alexander v. Big Rapids,* 70 Id. 224; *Boick v. Bissell,* 80 Id. 260; *Brezee v. Powers,* Id. 172.

*L. C. Stanley* and *R. A. Montgomery,* for defendant.

CAHILL, J. The plaintiff brings this suit as the wife of Charles Hammond, who was killed on Sunday, August 5, 1888, about 9 o'clock in the forenoon, on defendant's railroad track near Warner's crossing, in Shiawassee county, by a westward-bound passenger train over defendant's road.

The deceased had been in the employ of the defendant about three months as a section hand on the particular

section of road where the accident occurred. He was a middle-aged man, and of ordinary intelligence. On the morning of the accident, Hammond, in company with Charles Haley, the section foreman, and Fred King, a fellow-laborer, started with a hand-car from the car-house at Shaftsburg, about 8 o'clock, standard time, on a tour of inspection. They went west about five miles, and started back. When they were about 150 feet west of Warner's crossing, and while they were looking out for a train, they saw the smoke-stack over the bank to the left of the road, and at a distance in front of them of about 50 rods. The whistling-post was 40 rods east of the crossing. At the same moment they heard the whistle. Commencing a short distance east of the crossing was a curve in the road, running through a deep cut, the sides of which were about 25 feet high, so that a train approaching from the east could not be seen by persons at or west of the crossing until it had approached to the point near the whistling-post, where the deceased, and those who were with him, saw it on the morning in question. Fred King, who was on the hand-car at the time, says they were going very slowly, about five miles an hour.

"We were all on the watch of the curve, looking out, providing anything should appear to our sight in the shape of a train or smoke-stack. We were all on the watch, and as we were approaching along, with our eyes directly ahead watching for smoke or sound, we all at once saw the smoke just right up over the bank, at the edge of the bank, at the slope, and I immediately put my foot on the brake at my side,—I am always ready for it,—and Mr. Hammond just whirled, jumped in front of the car, and caught it, and Mr. Haley dropped off at the back, and we stopped the car, and I jumped off, with Mr. Haley, at the back. We caught hold and swung it round, leaving the two front wheels in the center of the track, kittering crosswise. We pulled on it twice. I then sprung to the front part of the car, and caught hold of the handle, and lifted that wheel that was just inside the

rail. Mr. Haley was pulling on the other end in the ditch. I pushed twice. It did not go. Then I took thought, and sprung right to one side, and hollered: 'Let her go. Out of the way!' And just at that everything went smash. When I hollered, 'Let her go. Out of the way!' he [Hammond] immediately looked back over his right shoulder, wild; made two or three steps, running down the track, kittering like with the car, running down the track to get out of the way. The last I seen him he looked very wild, as he was on the go,— wild and frightened."

The witness further testified that, after helping Haley lift over the west end of the car from the track, he stepped around to the other end with Hammond to help him, both having their backs towards the approaching train, and both standing inside the rails; that, at the time he called "Look out," Hammond could have stepped out of danger by taking two steps, but that, being bewildered, he took as many along the track, instead of over the track, when he was struck by the train and killed. The train was not a regular passenger train but what is known as a "wild" train. Dorr Schaft, a witness for the plaintiff, testified that he heard a conversation between the agent and operator at Shaftsburg and Mr. Haley that morning with reference to special trains being on the road.

"Think he said, 'There is one special train,' and that he told it to all of us. He was talking to Mr. King, Mr. McConnell, Charles Hammond, Charles Haley, and witness. Did not know what train he referred to; he said, 'Look out, there is a special coming.'"

The operator, when called as a witness, said he told King about the special train, but did not think the others heard it. It is quite evident, however, that all of the men were expecting and looking out for this train, and were taking some precautions against meeting it by going

83 Mich.—22.

slowly, and keeping a sharp lookout as they approached the curve in the road.

The negligence of the defendant, set out in the amended declaration, which is the only count upon which a recovery could be claimed on this record, is as follows:

"And the plaintiff avers that it became and was the duty of the defendant to provide a careful, competent, skillful, and painstaking foreman to manage, control, direct, and supervise the aforesaid work, in which the said Charles W. Hammond was engaged [meaning the work of operating the hand-car], and the said Charles W. Hammond, as such employé, had a right to rely upon the said Charles Haley, as his foreman and superior officer, as being such careful, skillful, and painstaking foreman, and that he would take every possible care· and precaution in propelling the said hand-car over the aforesaid section in a careful and prudent manner, and not endanger the life of the said Charles W. Hammond; and' the plaintiff further avers that the said Haley was not a careful, skillful, and cautious person, but was notoriously wanting in such care, skill, and prudence, as to entirely unfit and render him incompetent to have charge of such work as had been intrusted to him by said defendant; which fact the defendant then and there well knew, or might have known had it used proper care and diligence, as it was in duty bound to use, to ascertain the competency and care of said Haley; and yet the defendant negligently and wantonly retained said Haley, as such foreman, in its employment.

"And the plaintiff further avers that the said defendant did, to wit, on the said 5th day of August, cause to be operated and run over and along the line of said railroad a wild locomotive engine, or extra engine, and train, not then and there running on any regular or schedule time of the defendant, and the said locomotive or extra engine and train passed Warner's crossing at or about the hour of 9 o'clock on the forenoon of said 5th day of August; and the said Charles Haley, foreman and manager of said section, as aforefaid, was duly informed and apprised of the coming of the said wild or extra engine and train, and it then and there became and was his duty to take every possible precaution in propelling the said hand-car over the said section then in his charge, and to

avoid any accident or collision with the said wild or extra engine and train. Yet he, the said Charles Haley, entirely disregarding his obligation and duty, and with great recklessness, directed and caused said hand-car to be propelled and run from west to east over and along the aforesaid section at the time that he well knew that the said wild or extra engine and train was approaching from the east, and within a short distance, to wit, fifteen feet, of said Warner's crossing, which crossing is situated at a point about two miles west of the village of Shaftsburg, on the line of said defendant's railroad, where the track passes through a high embankment upon each side of the said defendant's railroad, and upon a sharp curve, whereby the view of an approaching train from the east is entirely cut off and obscured until said train approaches within a short distance, to wit, thirty rods, of said Warner's crossing; and it then 'and there became the duty of said Charles Haley, as such foreman, in approaching said Warner's crossing, to stop said hand-car at a safe point west of said crossing, to wit, 50 rods west of said crossing, and ascertain .whether there was a train of cars approaching over said defendant's track from the east which would be liable to collide with said hand-car, in the aforesaid dangerous part of said defendant's track.

"And the said plaintiff further avers that the said Charles Haley entirely failed to take such care or such other precaution as would enable him to avoid the danger of a collision with the train approaching from the east, but did, to wit, on the day and year aforesaid, carelessly and heedlessly direct and cause the said hand-car to be propelled, as aforesaid, from the west to the east to within eight rods, or thereabouts, of said Warner's crossing, whereby a collision occurred with the aforesaid wild or extra engine and train, to wit, one hundred and thirty feet west of said Warner's crossing, whereat he, the said Charles Hammond, deceased, was injured, and his death immediately ensued from said injury."

The only evidence in the record that tends in any manner to show that Haley was guilty of negligence on the morning in question is that which shows that, with the knowledge of an approaching train, he continued to propel the hand-car along the track in the manner hereto-

fore shown, without sending a lookout ahead to give warning. But if this conduct was negligent, it was participated in by Hammond. The latter had been going up and down this section of the road daily for three months. Whatever hazard there was in such a position was known to him, and he must be held to have voluntarily assumed it. It does not appear that Hammond was acting under express orders from Haley in remaining on the car, or against his will. The theory of the declaration is that Haley, the section foreman, had, by virtue of his position, such a control over Hammond, and such a right to direct his actions and movements, as to relieve the latter of all responsibility for his own negligence in remaining on the car under circumstances of danger; that Hammond was without fault so long as he submitted himself passively to the control of Haley. I do not find it necessary here to decide whether, under all circumstances, a section boss must be considered as the fellow-servant of the men working under him, so as to relieve the common employer from liability for his negligence. I am very clear that where, as in this case, the sole act of negligence relied on is participated in, and voluntarily consented to, by the person injured, with full knowledge of the peril, the question of the master's liability does not arise.

In this view of the case it becomes unnecessary to examine the more difficult question as to whether plaintiff's husband was guilty of contributory negligence in remaining on the track so long, while attempting to remove the hand-car, in the face of the approaching train. To leave the hand-car on the track without any attempt to remove it would have been inexcusable. Its presence there was a menace to the lives of the passengers on the train. It was the duty of the men in charge of

it to remove it, if they could do so without serious risk to themselves. That duty must be performed in great haste, without opportunity to estimate time or to calculate chances. The natural excitement of such a position of peril might well unfit a man for the exercise of that *reasonable* care which it is said one must exercise to avoid negligence. If, therefore, it appeared that defendant, through negligence, had induced Hammond to incur this danger, I am not prepared to say that his conduct at that moment showed him to be guilty of contributory negligence.

There was evidence tending to show that the section foreman was intemperate to an extent which made him an unsafe and unfit man for the position he held, but, as it was not claimed that he had been drinking, or was under the influence of liquor, on the day of the accident, it was irrelevant.

When the plaintiff had rested her case, the court directed a verdict for the defendant. It does not appear upon what ground. The instruction was correct on the ground that there was no evidence of defendant's negligence of which plaintiff's husband was not equally guilty.

The judgment is affirmed, with costs.

The other Justices concurred.