### BROWNE v. KING et al.

#### (Circuit Court of Appeals; Eighth Circuit. March 5, 1900.)

#### No. 1,300.

1. MASTER AND SERVANT—PERSONAL INJURY—NEGLIGENCE OF FELLOW SERVANT—SUFFICIENCY OF COMPLAINT.

Plaintiff, who was employed as a helper to the operator of an air drilling machine in a mine, was injured by reason of the drill striking a "missed shot," or drill hole filled with unexploded powder, and causing an explosion. The complaint alleged that plaintiff was under the direction and control of the operator, and that it was the duty of the operator and other drill runners working in the mine to look out for such "missed shots," and, after the explosion of any drill holes, to examine same, and, if they had failed to explode, to cause the powder to be removed; that it was not plaintiff's duty to examine as to such "missed shots," except when notified that one had occurred; that at the time of said explosion plaintiff had no notice nor knowledge thereof, nor any reason to believe that one existed, nor would he, as defendant well knew, be at all likely to discover such missed shot in doing the work he was employed to do; that neither defendant, nor the operator to whom plaintiff was helper, nor any other of the drill owners in the mine, after the explosion which preceded the accident to plaintiff, attempted to find said "missed shot," and to remove the powder therefrom, and, because of their failure so to do, defendant failed to furnish plaintiff such a reasonably safe place in which to work as it was in duty bound to do, and which plaintiff had reason to believe it had done. *Held*, that the complaint warranted the construction that the "missed shot" by which plaintiff was injured was planted by himself and the operator in the progress of the work which they, as fellow servants, had jointly undertaken to perform, and that they had returned to the use of the drill

without making a search for "missed shots," and, therefore, the complaint failed to state a cause of action for damages against the employer.

. 2. SAME.

Conceding that defendant had made it the "particular duty" of the drill runners to look out for and guard against "missed shots," and, after the explosion of any drill holes, to examine them, and, in the event that "missed shots" were found, to remove the powder, or notify the employés in the vicinity, and that the operator to whom plaintiff was helper neglected these duties, yet, it appearing that plaintiff knew that there was no absolute certainty that every shot they attempted to explode would do so, and that the operator neglected to search for "missed shots," the complaint fails to state a cause of action, since it is not alleged that defendant had not exercised reasonable care in the selection of the drill operator, nor that he was incompetent or unfit for any reason, nor that the place in the mine where plaintiff was set to work was unsafe when he entered defendant's employment.

3. SAME.

The drill operator and plaintiff, as his helper, being engaged in the common service of running the drill, and the very service they had been employed to perform, they were fellow servants, and, having proceeded to work the drill without taking steps to find out whether there was a "missed shot" or not, when they had full knowledge that shots had been fired, and that a "missed shot" might be reasonably anticipated, and, if found by the use of the drill, danger and injury would result to both, the plaintiff must be held to have assumed the risk of his own negligence.

4. SAME—SAFETY OF PLACE TO WORK—DUTY OF EMPLOYER TO INSPECT.

The danger from "missed shots" being incident to the very work which plaintiff was employed to perform, it was not the duty of the employer to make inspections for "missed shots" after each explosion.

In Error to the Circuit Court of the United States for the District of Colorado.

A demurrer was sustained to the complaint in the court below, and the only question presented by the writ of error is whether or not the action of the court in sustaining that demurrer was correct. The complaint is as follows:

"The plaintiff complains of the defendants, and alleges: That at the dates hereinbefore mentioned, as plaintiff is informed and believes, the defendants were, and still are, a partnership, doing business in Gilpin county and Arapahoe county, Colorado, under the name and style of the Cook Mining Company. That on or about the 7th day of July, 1898, the plaintiff was employed by the defendant company in the capacity of a helper on one of the air drilling machines used in and about the mine owned and operated by the defendant company; and on said 7th day of July he was set to work by the defendant company in assisting as a helper one Daniel Hanefin, who was operating an air drill in connection with the sinking of a certain shaft upon said mine of defendant company near Central City, in the state of Colorado. That while the said plaintiff and the said defendant Daniel Hanefin were so engaged at work and at a point in said shaft about 275 feet from the surface, the said air drill struck what is known as a 'missed shot,' or 'missed hole' (being more particularly described as a drill hole, or partly filled with unexploded powder), the existence of which missed shot so struck by said drill was wholly unknown to this plaintiff, and, as this plaintiff is informed and believes, and on such information and belief alleges the fact to be, was also unknown to the said Daniel Hanefin. That the striking of said missed shot caused the shot to explode, and such explosion caused a lot of dirt and rock to be hurled and thrown violently against this plaintiff, and portions of said rock penetrated and embedded themselves in both eyes of this plaintiff, knocked off part of his left ear, badly cut and bruised his left cheek, and cut and bruised his face and chest, whereby the plaintiff has completely lost his left eye, and has been obliged to have it removed, and has almost lost the vision of his right eye, the plaintiff being now able with said right eye only to see large objects, and not being able to read ordinary print, or to see objects the size of ordi-

nary print, as he was well able to do prior to the time of his accident. That before the time of the said accident occurred both eyes of the plaintiff were strong and healthy, and his vision was clear and distinct, and he was able to see perfectly, and to read. That his left ear was so badly cut and damaged, and the bones thereof so greatly injured, that the plaintiff has been obliged to have part of the bones removed, and a rubber tube inserted in his ear to keep it from closing up; and that his hearing in said left ear has been greatly weakened and damaged. That at the time the said accident occurred the said Daniel Hanefin was vested with full power to direct and control the action of this plaintiff in and about his said work as helper, and that, among other things, it was the duty of said Hanefin and other machine or drill runners who worked in and about said mine to look out for and guard against missed shots, and, after the explosion of any drill holes, to examine or cause to be examined the said drill holes, to ascertain whether any shots had missed or failed to explode, and, in case any such shots had missed or failed to explode, to remove or cause to be removed the powder therein, or at least to notify the men working in the vicinity of same of the existence thereof, so that the danger of striking same might be avoided. That it was never at any time the duty of this plaintiff to examine as to said missed holes or missed shots, except when so ordered to do by the machine runners notifying him that a missed shot had occurred, and to look out for it. That at the time the missed shot occurred which injured the plaintiff in this case he had had no notice that any missed shot had occurred. That this missed shot struck as aforesaid should have been and would have been discovered by the said Hanefin, or the other machine runners, had he or they exercised proper care in the performance of their duty, and that either the said Daniel Hanefin or the other machine runners did not discover the said missed shot, or else, if knowing of the existence thereof, utterly failed to notify this plaintiff of same. That at the time this plaintiff was set to work on said July 7, 1898, at a point in said shaft where said explosion occurred, this plaintiff did not have any notice, knowledge, or reason to believe that the said missed shot existed at the place where he was so directed to work as aforesaid. Nor would the said plaintiff (as the defendant company well knew), in doing the work he was so ordered to do, be at all likely to discover the said missed shot or missed hole; and the defendant company, in so directing this plaintiff to work at the point named, exposed him to very great danger, such as was not incident to his employment, and which this plaintiff did not and had not the means of knowing. That the said missed shot or missed hole was covered up by a lot of fine dirt and dust, so that it could not be seen by this plaintiff. That the plaintiff is of the age of 31 years, and prior to the said accident was in good health, and had a sound body; and at the time the accident occurred he was receiving as wages $3 per day of eight hours. That for four years prior to the said accident he had worked as a miner in and around Central City, and had been able to earn wages from $2.75 to $3.75 per day, and during said time he worked almost continuously, making on an average about $3 per day. That at the time said accident occurred the defendant company was sinking a very large shaft in said mine, being about 8 feet wide and 25 feet long, and in prosecuting their said work used air drills. That this plaintiff, prior to working in the said mine of defendant company, had never worked in any way or in connection with air or machine drills. That there is a very essential difference between mining with air or machine drills and mining with hand drills. That with hand drills the holes are usually sunk between 18 inches and 4 feet, and only on extraordinary occasions more than that; that in the mine of defendant company it was the custom to sink the holes 6 feet. Also in machine drilling it is customary to sink more holes than in hand drilling, and this was the practice of the defendant company, the number of holes drilled for each explosion in the shaft being more than would have been sunk had the drilling been done by hand. That these differences between machine and hand drilling, as this plaintiff is now informed and believes, and on such information and belief charges the fact to be, also exposed this plaintiff to risks and danger to which he would not have been exposed had ordinary hand drilling been used, and with less holes. That the increased danger to which plaintiff was thus exposed was unknown to this plaintiff at the time said accident to him

alleged herein occurred; and; as plaintiff was advised, it was the duty of the drill runners to look out for missed shots, and, as such drill runners were intrusted with that particular duty by the defendant company, this plaintiff had good reason to believe, and did believe, that they were experienced, and fully competent to look out for and discover missed shots, and were exercising the proper care in that regard. And when he was set to work by said Daniel Hanefin on said July 7, 1898, in the said shaft, without the said Hancfin or any one else having given him warning that a missed shot had occurred, he had good reason to believe, and did believe, that he was perfectly safe in assuming that proper precaution against missed shots had been used, and that no danger therefrom existed. That the plaintiff, since his said accident, has been informed and believes, and on such information and belief charges the fact to be, that the only proper method to discover missed shots in a shaft like the one of the defendant company where work was being prosecuted with air drills as was done by defendant company on said July 7, 1898, is to clean away the rock and dirt caused by each explosion and search for each hole which has been charged with powder, and to pick out said hole with a gouger or scraper to ascertain whether or not it had been entirely discharged of the powder placed therein, and, upon finding any powder therein, to remove the same. That, as plaintiff is now informed and believes, and on such information and belief charges the fact to be, neither the defendant company nor any of its officers, nor the said Daniel Hanefin, nor any other drill runners in and about the said mine, cleared away the rock and dirt after the explosion of the drill holes which preceded the accident herein referred to, or searched for said missed hole or shot, or attempted to find said missed hole, or pick out the powder that was left therein with a gouger or scraper. And because of their failure so to do the said defendant company failed to furnish for this plaintiff such a reasonably safe place in which to work as it was in duty bound to do, and which this plaintiff had reason to believe it had done. That, as hereinbefore alleged, this plaintiff was entirely unfamiliar and uninformed as to the methods that should have been practiced by the said drill runners in looking for missed shots in connection with the work which was being prosecuted on said July 7th in the said shaft of said defendant company; and that, therefore, this plaintiff was unable to judge or to know whether or not the defendant company or its drill runners were fully performing their duties in connection with searching for, finding, and guarding against missed shots, but took it for granted (as he had a right to do) that they were. That this plaintiff, after said injury to his eyes, ear, face, and body, placed himself under the care of a skilled oculist, aurist, and surgeon, with the hope and purpose of saving his sight and hearing, if possible, and also of having his numerous wounds about his face, body, and ear properly and safely cared for. But under the most careful and skillful treatment plaintiff's left eye has had to be removed, and the sight of his right eye is very greatly damaged, as hereinbefore stated. His left ear is also greatly impaired, and his face badly scarred. This plaintiff, while undergoing treatment for said injuries, and up to the present time, has been totally unfit and unable to engage in any work, and by his enforced idleness for a period of five months and a third has lost about $450 in wages; and his physical condition is such at present that it may be many months and years before he will be able to make a living for himself. That since said accident the plaintiff has been obliged to spend four months in the hospital, at an expense of $200, and in and about the medical treatment for his eyes, ear, face, and body has paid and incurred a liability in the sum of $800; and he is still under the care of a physician and oculist. That he has suffered since said accident, and as a result thereof, great physical pain, and will continue to suffer the same for many months to come, and possibly during the balance of his life. And that, in addition to the said expenditure of money for hospital and medical treatment, he has suffered damages by reason of the loss of his left eye, damage to his right eye and hearing, and his bodily disfigurement, to the amount of $25,000. Wherefore," etc.

R. D. Thompson and B. M. Malone, for plaintiff in error.

W. J. Miles, for defendants in error.

Before CALDWELL and THAYER, Circuit Judges, and ROG-ERS, District Judge.

ROGERS, District Judge, after stating the case as above, delivered the opinion of the court.

Under the settled law in the federal courts, the plaintiff in error (hereafter called the plaintiff) and Daniel Hanefin were undoubtedly fellow servants, in a general sense. Railroad v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Coal Co. v. Johnson, 6 C. C. A. 148, 56 Fed. 810. But an employé may occupy the double relation of a fellow servant and vice principal at one and the same time. He may be a fellow servant in a general sense, and a vice-principal for the performance of some special duty confided to him by the master. Fones v. Phillips, 39 Ark. 17; City of Minneapolis v. Lundin, 7 C. C. A. 344, 58 Fed. 525. One question here is whether the allegations of the complaint are sufficient (for the demurrer admits they are true) to show that Daniel Hanefin was a vice principal of the defendants as to the particular duty, alleged, to wit, "to look out for and guard against missed shots, and, after the explosion of any drill holes, to examine or cause to be examined the said drill holes, and ascertain whether any shots had missed or failed to explode, and, in case any such shots had missed or failed to explode, to remove or cause to be removed the powder therefrom, or, at least, to notify the men working in the vicinity of the same" before permitting them to resume the use of the drill. If Hanefin was a vice principal in this respect, then the law which imposes the duty upon the master to exercise ordinary care to furnish the servant a safe place to work devolved on him, and the master cannot avoid the responsibilities for his neglect to perform such duties. This principle is famliar, and is also settled in the federal courts. City of Minneapolis v. Lundin, 7 C. C. A. 344, 58 Fed. 525; Mining Co. v. Ingraham, 17 C. C. A. 71, 70 Fed. 219. But, while it is the duty of the master to exercise ordinary care to furnish the servants a safe place in which to work, there is an exception to that rule as well established as the rule itself, namely, that, where the work which the servant is employed to perform is such work as necessarily involves the constant change of the place where the work is to be done; or, to state it more concisely, where the work the servant undertakes to do involves the constant change of the place where he does the work, then the servant assumes the risk necessarily or ordinarily incident to such changes. Railway Co. v. Jackson, 12 C. C. A. 507, 65 Fed. 48; City of Minneapolis v. Lundin, 7 C. C. A. 344, 58 Fed. 525.

The complaint in this case is unnecessarily prolix, and the facts by no means clearly or consecutively stated. It is to some extent susceptible of different constructions. Recognizing and keeping in mind the principles decided in the cases above cited, in our opinion the decision in this case depends upon the proper construction to be placed upon the complaint. If the "missed shot" which exploded and injured the plaintiff was planted either by defendants or their other employés, and an effort had been made to explode it and other

shots at the same time, some of which did explode, and covered up the "missed shot" with rock and other matter thrown up by the shots which exploded, and all this occurred before Hanefin and Browne began work in the shaft where the injury occurred, and Browne was set to work in the shaft without being warned, and ignorant of the fact that no examination had been made for "missed shots"; or if Hanefin assisted in planting, or planted, the "missed shot," and attempted to explode it and others at the same time, some of which did explode, and, in the way above stated, concealed the "missed shot," and it was the duty of Hanefin, after such explosion of shots, to examine for "missed shots," and, if any were found, to remove the powder, or notify other employés of their existence, and he neglected this duty, and Browne, being ignorant of that neglect, was afterwards set to work at the place where he was injured; or if Hanefin, having made examination, found, or knew of the "missed shot," and Browne did not, and it was his duty to notify Browne, or remove the powder therefrom, and Hanefin neglected to notify the plaintiff of the danger, and he was ignorant of Hanefin's neglect of duty when he began to work; or if Hanefin did not assist in planting, nor plant the shots himself, but knew that shots had been fired in the shaft in question, and that no examination had been made for "missed shots," and it was Hanefin's duty to make such examinations, and, if "missed shots" were found, to clean the powder therefrom, or notify Browne, and he failed to discharge these duties, and afterwards Browne was set to work in the shaft, Browne being ignorant of the fact that no examination had been made for "missed shots,"—then, we think, in either of the events stated, a good cause of action existed. But if the "missed shot" by which plaintiff was injured was planted there by Hanefin and Browne, in the progress of work which they, as fellow servants, had jointly undertaken to perform, and after they attempted to explode the "missed shot" and others at the same time some had exploded and concealed the one by which plaintiff was injured, and they returned to the use of the drill without making a search for "missed shots," and Browne was injured in the manner alleged, then we are of the opinion that no cause of action existed.

There are some allegations in the complaint from which inferences more or less remote might be drawn sustaining either proposition. We have concluded, however, after a careful analysis of the complaint, that, if the facts had warranted it, the draftsman would not have left, either unstated or in any uncertainty, the facts essential to take the case out of the exception to the rule above stated, and bring it clearly within the general rule stated above, which rule is familiar and well settled in all the courts, both state and federal.

There is no allegation in this complaint by which the court can tell with any reasonable certainty who planted the "missed shot" by the explosion of which plaintiff was injured. It is, however, entirely consistent with all the allegations in the complaint that it was planted by plaintiff and Henefin on the very day it exploded, and in the pursuit of the very work they were employed to perform. Indeed, there are allegations in the complaint from which it clearly appears

that the explosion of shots had occurred after the plaintiff began work, for he alleges in the complaint "that it was never at any time the duty of this plaintiff to examine as to missed holes or missed shots, except when so ordered to do by the machine runners notifying him that a missed shot had occurred, and to look out for it." But, if no shots had been exploded after Browne began work, and before the one which injured him, he could not have been- called upon by the drill runners to examine for "missed holes" or "missed shots."

The complaint also contains this allegation:

"That, as hereinbefore alleged, this plaintiff was entirely unfamiliar and uninformed as to the methods that should have been practiced by the said drill runners in looking for missed shots in connection with the work which was being prosecuted on said July 7th in the said shaft of said defendant company; and that, therefore, this plaintiff was unable to judge or to know whether or not the defendant company or its drill runners were fully performing their duties in connection with searching for, finding, and guarding against missed shots, but took it for granted (as he had a right to do) that they were."

The fair inference to be drawn from this allegation is that the plaintiff was injured while in the prosecution of the work he had been employed to perform, but, being unacquainted with the dangers incident to the performance of the work, was unable to tell whether or not the drill runners were making the necessary examinations to detect "missed shots." It must also be borne in mind that there is no distinct allegation in this complaint that the shot by which the plaintiff was injured was not planted by Hanefin and himself in the progress of the work; nor is there any distinct allegation in the complaint that he did not know that an explosion of shots had shortly before occurred, and that no examination had been made thereafter for "missed shots." It was easy for the pleader to have removed all doubt on both of these points. The facts doubtless did not warrant it. We think, therefore, in view of the fact that it is the duty of the plaintiff to state, in clear and concise language, the facts which constitute his cause of action, and the failure upon the part of the plaintiff in this case to state that the "missed shot" by which he was injured was not planted by some one other than Hanefin and himself, and his further failure to state that he did not know that the shots had been fired and that no examination had been made thereafter for "missed shots," and in view of the fact that it is not the duty of the court to construe the pleading more favorably to the pleader than he himself has stated it, justifies the construction. in view of the allegations of his complaint above set out. that Hanefin and himself planted the shot by which he was injured. Assuming, then, as is somewhat equivocally or inferentially stated in the complaint, that the defendant company had made it the "particular duty" of the drill runners to look out for and guard against "missed shots," and, after the explosion of any drill holes, to examine, or cause to be examined, the said drill holes, and, in the event "missed shots" were found, to remove the powder, or notify the employés working in the vicinity thereof, and that Hanefin had neglected to discharge these duties, we are brought to the consideration of the question as to whether or not the plaintiff can re-

cover on the basis of the construction stated, which, we think, is the one the complaint ought to have.

Plaintiff was a man 31 years of age; a miner; had been working around the mine for four years, but had never worked with air drills. The shots, however, had to be fired off whether the holes were made with air drills or hand drills; the former, no doubt, more dangerous, because the drill holes were deeper, and the charge of powder larger. In the very nature of things, plaintiff must have known that there was no absolute certainty that every shot they attempted to explode would do so. The allegations of his complaint, supra, show he knew it, for he had been previously directed by the machine runners to search for "missed shots," and he knew, of course, the necessity therefor, and the method he had employed in making such search. He must also be held, under the construction placed on the complaint, to have known of Hanefin's neglect of duty in not searching for "missed shots" after their effort to explode the "missed shot" by which he was injured. No complaint is made that the defendants had not exercised reasonable care in the selection of Hanefin to take charge of the work they were doing, or that he was incompetent or unfit for any reason. It must be assumed, therefore, that he was competent, and fit for the work he was doing, and that defendants had been guilty of no negligence in his selection for that purpose. It is not shown that the place was unsafe when plaintiff entered the particular service of the defendants. The fair construction is, the place became unsafe as the incidental result of the prosecution of the work, and that while plaintiff and his co-servant were prosecuting their work with a knowledge of such unsafety, and without having taken the necessary precautions to make it safe, plaintiff was injured. Should plaintiff recover upon such a state of facts as this construction of the complaint involves? The measure of the master's duty to his servant while engaged in a work which necessarily involves a constant change of the place itself in which the servant is set to work is: (1) To exercise reasonable care to have the place in which the servant is to work safe when he is set to work, having regard for the nature and character of the work which is to be done; (2) to furnish reasonably safe machinery, tools, and appliances with which to do the work, having regard to the nature and character of the work, and to exercise reasonable care to keep them so by making necessary inspections, repairs, and the like; and (3) to exercise reasonable care to employ competent and fit persons to discharge the several duties they are required to perform, both with reference to the machinery and appliances, as well as other work to be done. See Railroad v. Baugh, supra. In the absence of any allegations in the complaint to the contrary, it must be conceded in this case that these duties were performed by the master. Of what, then, does the plaintiff complain? It amounts to this: That he and his fellow servant, with the full knowledge that shots had been fired, and that a "missed shot" might be reasonably anticipated, and, if found by the use of the drill, danger and injury result to both, proceeded to work without taking any steps to find out whether there was a "missed shot" or not. We do

not think the master can be held liable under such a state of facts, for it is difficult to see how it can be reasonably contended that plaintiff did not assume the risk of his own reckless act. It also seems clear that, being injured while Hanefin and himself were running the drill,—the common service of the master, and the very service they had been employed to perform,—they were fellow servants within the rules established in the cases already cited.

Coal Co. v. Patting, 30 C. C. A. 168, 86 Fed. 433, was a mining case, where the plaintiff was injured by the rapid descent of the cage in a deep shaft. The machinery for lowering the cage was suitable and fit for the work, and in good repair. The shaft was properly constructed. The engineer in charge of the engine used for lowering the cage was competent and fit, but on this particular occasion he neglected to expel the water from the cylinder of the small engine by which the brake and reversing apparatus were operated, and thereby lost control of the cage, and it descended to the bottom with great force, and injured the plaintiff. A verdict was rendered for him, but the case was reversed, all the circuit judges concurring. There were four distinct allegations of negligence in that case:

"First, that the defendant failed to furnish a sufficient brake; second, that the defendant was negligent in the employment and retention of a competent engineer; third, that there was no light at the bottom of the shaft at the time of the accident, and that this absence of light contributed to the plaintiff's injury; fourth, that defendant was guilty of negligence in failing to supply a sufficient reversing apparatus and appliances."

At the conclusion of the evidence a separate motion was made in that case to withdraw each of the four propositions from the jury because not supported by the evidence adduced. A peremptory instruction was also asked for upon the whole case. All were refused, and the case was submitted to the jury on all four points. In discussing that case, Mr. Justice Woods, delivering the opinion of the court, said:

"We consider it clear beyond reasonable dispute or debate that there was no evidence to justify the court in leaving to the consideration of the jury whether there was a liability on the second, third, or fourth ground. There is no evidence of the engineer's incompetency, unless it be in the circumstance and fact of the accident complained of. In that instance it is clear enough that he was guilty of negligence in not expelling the water from the cylinders of the small engines by which the brake and the reversing apparatus were operated, but in that single act of negligence there is not proof of a want of competency; and, if there were, it was impossible that the master should have known of it before it happened. The competency and experience of the engineer were proved by satisfactory evidence, and before the occurrence in question there was no known reason why the company should not have believed him equal to every emergency of the employment."

He then adds:

"There was no defect in the reversing apparatus. It did not work with prompt efficiency on this occasion because of the failure of the engineer to expel the water from the engine by which it was controlled, but the company is not responsible for the negligence of the engineer, who was a fellow servant of the plaintiff."

The court then declines to express an opinion as to whether or not the company ought to have provided a brake to be operated by hand

in case of the failure, from any cause, of the one worked by steam power. In that case the company had furnished safe machinery and appliances for operating the cage. It had furnished a competent engineer. The engineer, however, had neglected to keep the machinery in that condition in which it should have been at the time the injury occurred, and the court distinctly recognizes the fact that the company cannot be held liable for the negligence of the engineer, although it is conceded to be the duty of the company to furnish safe machinery, and to exercise reasonable care to keep the same in that condition by the necessary inspections, repairs, etc.

In the Baugh Case, supra, Mr. Justice Brewer said:

"Obviously, a breach of positive duty is personal neglect; and the question in any given case is, therefore, what is the positive duty of the master? He certainly owes the duty of taking fair and reasonable precautions to surround his employé with fit and careful co-workers, and the employé has a right to rely upon his discharge of this duty. If the master is careless in the matter of employing a servant, it is his personal neglect; and if, without proper care in inquiring as to his competency, he does employ an incompetent person, the fact that he has an incompetent, and therefore an improper, employé, is a matter of his personal wrong, and owing to his personal neglect. And, if the negligence of this incompetent servant works injury to a co-servant, is it not obvious that the master's omission of duty enters directly and properly into the question of responsibility? If, on the other hand, the master has taken all reasonable precautions to inquire into the competency of one proposing to enter into his service, and as the result of such reasonable inquiry is satisfied that the employé is fit and competent, can it be said that the master has neglected anything,—that he has omitted any personal duty; and this, notwithstanding that, after the servant has been employed, it shall be disclosed that he was incompetent and unfit? If he has done all that reasonable care requires to inquire into the competency of his servant, is any neglect imputable to him? No human inquiry, no possible precaution, is sufficient to absolutely determine in advance whether a party, under certain exigencies, will or will not do a negligent act. So it is not possible for the master, take whatsoever pains he may, to secure employés who will never be guilty of any negligence. Indeed, is there any man who does not sometimes do a negligent act? Neither is it possible for the master, with any ordinary and reasonable care, always to secure competent and fit servants. He may be mistaken, notwithstanding the reasonable precautions he has taken. Therefore, that a servant proves to be unfit and incompetent, or that in any given exigency he is guilty of a negligent act resulting in injury to a fellow servant, does not of itself prove any omission of care on the part of the master in his employment; and it is only when there is such omission of care that the master can be said to be guilty of personal wrong in placing or continuing such servant in his employ, or has done or omitted aught justifying the placing upon him responsibility for such employé's negligence. Again, a master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools, and the machinery than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools, and the machinery owes a positive duty to his employé in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety; and it matters not to the employé by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to

have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but, if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor. But, it may be asked, is not the duty of seeing that competent and fit persons are in charge of any particular work as positive as that of providing safe places and machinery? Undoubtedly it is, and requires the same vigilance in its discharge. But the latter duty is discharged when reasonable care has been taken in providing such safe place and machinery, and so the former is as fully discharged when reasonable precautions have been taken to place fit and competent persons in charge. Neither duty carries with it an absolute guaranty. Each is satisfied with reasonable effort and precaution."

But it is insisted that it was the duty of the defendants to make inspections for "missed shots" after each explosion, and that this was a positive duty which defendants owed to plaintiff, for the neglect of which positive duty the defendants could not escape responsibility. But was it the positive duty of defendants to make inspections after each shot? Under the cases cited, we think not. The danger was temporary. It was a danger incident to the very work the plaintiff was employed to perform. Until, in the progress of the work, the "missed shot" failed to explode, there was no danger. The danger, therefore, was one incident to the work, and the plaintiff had assumed all dangers or risks incident to the work when he entered the defendants' service, including any neglect of duty by his co-servant, Hanefin. The injury, therefore, did not flow from the failure of the defendants to discharge their duty, but from the neglect of the duty upon the part of a fellow servant, and it was a negligence, too, in which the plaintiff in this case knowingly participated. Hammond v. Railway Co., 83 Mich. 334, 47 N. W. 965; Herman v. Milling Co. (D. C.) 71 Fed. 853.

The case of Anderson v. Mining Co. (Utah) 50 Pac. 815, is a mining case, and one very much in point. The language of the court in that case is entirely appropriate to the one at bar. It is as follows:

"In entering the employment of the defendant the plaintiff assumed the ordinary risks incident to the employment engaged in. These risks were such usual hazards, dangers, and perils as belonged to the peculiar occupation of blasting rock with dynamite, including the carelessness of those engaged with him in the same work and employment. The employer was bound to furnish a reasonably safe place and appliances with which to do the work. But where the nature of the business is extremely dangerous, and conditions are necessarily continually changing by reason of placing and setting of blasts, whereby dangerous conditions arise continually through the acts of the servant, without the knowledge of the master, the employer cannot be held responsible therefor without his fault, but such temporary dangerous conditions arise from the nature of the employment, and are among the natural and ordinary risks and hazards attending the employment, for which the defendant is not liable. The duty of furnishing a safe place and safe appliances with which to do the work, and keeping the same safe, so far as the employer is able to do, by the use of ordinary care and prudence, cannot be delegated to an agent or servant of any degree, so as to escape responsibility by the master. In such a case the servant may become a vice principal. But this rule cannot ap-

ply to a condition of danger brought about by the negligent acts of a servant or a fellow servant, for whose acts he is responsible, nor to the hazards and dangers arising from the employment, and belonging to the peculiar occupation in which the servant is engaged, and which he assumed when he entered the master's service. So far as appears, the master furnished a reasonably safe place to work, and safe appliances to work with, considering the nature of the work to be performed; and the servant, by his negligence and want of reasonable care, rendered the place unsafe, without the master's fault or knowledge. Under such conditions the servant does not become vice principal, and his knowledge is not the knowledge of the principal, so as to render the principal liable."

In conclusion, we ought to say that we are not disposed to be hypercritical in regard to pleadings, but rather incline to be liberal; but where such a question as this is raised in apt time, by demurrer, so that defects may be cured by amendment, no good can come by encouraging a laxity of pleading to that extent that the court cannot tell with reasonable certainty what the real facts are the pleader intends to state, and especially when we are impressed strongly by the pleading itself that, if the judgment was reversed, the facts, when developed, would ultimately show no case. Affirmed.