### PACIFIC COAST COAL CO. v̇. BROWN.

(Circuit Court of Appeals, Ninth Circuit.   February 24, 1914.)

#### No. 2275.

MASTER AND SERVANT (§ 190*)—LIABILITY FOR INJURIES—NEGLIGENCE OF FEL-
LOW SERVANT.

Conceding that, notwithstanding the statute of Washington providing that in all mines where fire damp is generated every working place shall be examined every morning with a safety lamp by a competent person and a record of such examination made, the operator of the mine is still bound to exercise such further care as the common law imposes upon him, a fire boss, one of whose duties was to make tests for gas before firing shots, was not the representative of the operator, but was a fellow servant of the miners, and the operator was not liable for his failure to make such a test before firing a shot.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Clinton W. Howard, Judge.

Action by Stanley Brown against the Pacific Coast Coal Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Farrell, Kane & Stratton and Stanley J. Padden, all of Seattle, Wash., for plaintiff in error.

H. R. Lea, of Tacoma, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The defendant in error, a coal miner by occupation, brought this action in the court below against the plaintiff in error coal company to recover damages for injuries sustained

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by him by the explosion of gas at the place in the mine where he was working, which was at breast No. 77 on the sixth level of the plaintiff in error's extensive Black Diamond coal mine, in King county, state of Washington; the complaint alleging as grounds of the action the neglect of the defendant thereto to furnish the plaintiff a safe and secure place in which to work, and, further:

"That for want of due care and attention to its duty toward the plaintiff, on or about the 17th day of September, 1910, the defendant caused Ignato Rigga, or a person of similar name, whose exact name is to complainant unknown, being then and there in the employ of the defendant as a gas tester and fire boss, and acting in due course of his employment, to ignite a fuse with the intent of blasting in said mine, in the due course of his employment as gas tester and fire boss, and at said time there was an accumulation of combustible and explosive gases in said mine, and by reason of the accumulation of said gases and by reason of the negligence, carelessness, and default of the defendant in improperly ventilating said mines, and in failing to ascertain the presence of said gases, the said gases were negligently and carelessly lighted by the said person designated as Ignato Rigga, while he was igniting the said fuse, and the gases in said mine burned and exploded and injured the plaintiff, whilst the plaintiff was in the employ of the defendant in the capacity aforesaid, and as a result of said combustion and explosion the plaintiff was greatly burned and wounded about his head, arms, and side, and had a rib broken upon his left side, as a result of a fall caused by said explosion," etc.

The answer of the company, in addition to the denials of the averments of the complaint, set up the affirmative defenses of contributory negligence on the part of the plaintiff, negligence of a fellow servant of the plaintiff, and assumption of risk, by the latter.

It appeared in evidence that the plaintiff was a young man but little past majority, and had been working in coal mines for about two years, and in this particular mine about five days, which mine was and is a gaseous one. Being such, it was, of course, the duty of the company to provide for its proper ventilation, one means of which was the erection of brattices, the purpose of which is the control of currents of air, thereby carrying away the gas. The evidence shows that a brattice was erected at the place in question 8 or 10 feet from breast No. 77, which, under ordinary conditions, was sufficient to control the air currents. The evidence in respect to the ventilation of the mine is indefinite, uncertain, and more or less conflicting.

It appears that the plaintiff, Brown, and another miner named Yeshon were put to work at the breast mentioned, in the face of which they bored certain holes, prepared the same for blasting, and then retired to a crosscut to eat their lunch; that one Righi was the fire boss of the sixth level, provided with a lamp specially designed for the detection of gas and differing in that respect from the lamps supplied the ordinary miners; and that it was the duty of Righi to make such tests before firing the shots on that level, which he only was allowed to do. Above Righi in the management of the mine was the head fire boss, from whom Righi took orders, and above him was the foreman of the mine, who in turn took orders from its superintendent, by whom the miners were employed. The evidence is that, shortly after the plaintiff Brown and his coworker Yeshon had inserted the explosives and fuses in the holes referred to and prepared them for

firing, the fire boss appeared in the crosscut where they had lunched and asked if the shots were ready, and, being answered in the affirmative, they were told to show them to him. The plaintiff replied to the effect that there was some gas there, when Righi told him, "Never mind the gas," or, "The gas is nothing," and directed that he be shown the holes, which the plaintiff and his companion miner proceeded to do. The two miners mentioned testified that Righi did not make any test with his lamp for gas, which, it appears from the testimony, was a colorless, tasteless, and odorless gas known as fire damp, while Righi testified to the effect that he did make such test. When the plaintiff showed Righi the fuse to the first shot and the latter began preparations for firing it, Yeshon left the place, but the plaintiff remained, with the result that when the first fuse was lighted by Righi the explosion occurred, inflicting the injuries for which the suit was brought.

The defendant excepted to the following instructions of the court to the jury:

"Now, if there was any neglect on the part of the defendant corporation to provide for the ventilation of the mine in which the plaintiff was at work, that is a breach of legal obligation which creates a legal liability to render compensation for the injury suffered. That is an obligation which rests upon the employer to the extent that it cannot be delegated to some one else. I mean by that the employer cannot say: 'I appoint my superintendent or my foreman to attend to that, and the failure to provide suitable ventilation is the failure of an employé—a fellow employé with the plaintiff.' The employer is not allowed to make that defense in regard to that particular duty and obligation. Whoever was placed in the position to see to the ventilation was the representative of the defendant corporation, and for the purpose of deciding the case is to be considered as the principal in the matter.

"You are instructed that the law requires that the owner, agent, or operator of a coal mine must furnish not only a reasonable safe place in which to work, but also safe appliances, and this includes the timber required with which to provide and maintain a good and sufficient ventilation to carry out dangerous gases.

"You are instructed that the duty of inspection, prevention, and removal of any accumulation of gas is imposed on the coal company. This duty is personal and cannot be delegated, and any person who for the company was engaged in an employment having as part of his duties the duty of inspection, prevention, and removal of any accumulation of gas is not a fellow servant of a coal miner with respect to the performance of that duty.

"Now, a man may be a fellow servant in the general operations of the coal mine; but, wherever he is charged with the employer's specific duty of providing for ventilation and suitable means for making the operation of the mine safe, he is not a fellow servant in the performance of those duties.

"A coal company employing such person would be responsible for all damages caused by reason of negligence in the performance of his duties in the prevention, inspection, and removal of any accumulation of gas.

"You are instructed that an employé of a coal company one of whose duties it is to test for gas in a coal mine is not a fellow servant with the coal miner so far as he is engaged in the performance of such duty."

The mine in question being a gaseous one, necessarily in working it gas was developed, of which the plaintiff, according to his own testimony, had knowledge.

It is insisted on the part of the appellant that the appellee assumed the risk of the work in which he engaged, and also that the proximate cause of the injury complained of was Righi's failure to test for gas

before lighting the fuse, and that he was the fellow servant of the appellee, for whose negligence the company was not liable.

The evidence is such that the jury might have found against the plaintiff upon the question of reasonable provisions for the ventilation of the mine, and, as the direct proximate cause of the accident was manifestly the failure of the fire boss to test for gas by means of his lamp before igniting the fuse, the real question in the case is whether the court below was right in instructing the jury as it did that he was to be regarded as the representative of the company and not as a fellow servant of the plaintiff. If the former, then manifestly the company did not furnish the plaintiff a safe place in which to work; but, if the latter, it is equally plain that the instruction was erroneous and that the judgment should be reversed.

Much reliance is placed by the appellee upon the decision of the Supreme Court of the state of Washington in the case of Costa v. Pacific Coast Co., 26 Wash. 138, 66 Pac. 398, in which it was held in effect that such a gas tester was the personal representative of the company. Under the statute of the state of Washington of 1891, that was undoubtedly so, for it provided as follows:

"The owner, agent or operator of every coal mine, whether operated by shaft, slopes or drifts, shall provide and maintain in every coal mine a good and sufficient amount of ventilation for such persons as may be employed therein, the amount of air in circulation to be in no case less than one hundred (100) cubic feet for each person per minute, measured at the foot of the downcast, the same to be increased at the discretion of the inspector according to the character and extent of the workings or the amount of powder used in blasting, and said volume of air shall be forced and circulated to the face of every working place throughout the mine, so that said mine shall be free from standing powder smoke and gases of every kind." Laws of 1891, c. 81, § 9.

There was then, therefore, in the state a statute expressly requiring all such mines in the state to be kept free from gas of every kind, which imposed upon the operator thereof the imperative duty of complying with the law. But that statute was subsequently changed by the Legislature of the state of Washington, and at the time the present case arose the statute of the state (Rem. & Bal. Code, § 7381) provided as follows:

"The owner, agent or operator of every coal mine, whether operated by shafts, slopes or drifts, shall provide in every coal mine a good and sufficient amount of ventilation for such persons and animals as may be employed therein, the amount of air in circulation to be in no case less than one hundred cubic feet per minute for each man, boy, horse or mule employed in said mine and as much more as the inspector may direct, and said air must be made to circulate through the shafts, levels, stables, and working places of each mine and on the traveling roads to and from all such working places. Every mine shall be divided into districts or splits, and not more than seventy-five persons shall be employed at any one time in each district or split: Provided, that where the inspector give permission in writing a greater number than seventy-five men, but not to exceed one hundred men may be employed in each of said splits: Provided, also, that in all mines already developed, where, in the opinion of the mining inspector, the system of splitting the air cannot be adopted except at extraordinary and unreasonable expense, such mine or mines will not be required to adopt such split air system, and the owner or operators of every coal mine shall have the right of appeal from any order requiring the air to be split, to the examining board provided for in section 7372,

and said board shall, after investigation confirm or revoke the orders of the mining inspector. Each district or split shall be ventilated by a separate and distinct current of air, conducted from the down-cast through said district, and thence directed to the up-cast. On all main roads where doors are required, they shall be so arranged that when one door is open the other shall remain closed, so that no air shall be diverted. In all mines where fire damp is generated, every working place shall be examined every morning with a safety lamp by a competent person, and a record of such examination shall be entered by the person making the same in a book to be kept at the mine for that purpose, and said book must always be produced for examination at the request of the inspector."

The requirement of the state statute, therefore, in force at the time of the present case arose, is that, in such mines as the one in question "every working place shall be examined every morning with a safety lamp by a competent person, and a record of such examination shall be entered by the person making the same in a book to be kept at the mine for that purpose, and said book must always be produced for examination at the request of the inspector," which is a far less drastic provision than that of the former act, requiring all such mines in the state "to be kept free from gas of every kind."

Conceding that, notwithstanding this specific provision of the Washington statute requiring the examination every morning by a competent person with a safety lamp of every working place in such mines and the entry in a book kept for that purpose of the result of such examination, the operator is still responsible for such further care as the common law imposes upon him, that law does not make of such an employé as Righi, in the instant case, the representative of the master; for certainly, under that law, in view of the ruling of the Supreme Court of the United States in the case of Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390, and other decisions of that court there referred to, he must be regarded as the fellow servant of the plaintiff. See, also, the decision of this court in Davis v. Trade Dollar Mining Co., 117 Fed. 122, 54 C. C. A. 636; Browne v. King, 100 Fed. 561, 40 C. C. A. 545; and What Cheer Coal Co. v. Johnson, 56 Fed. 810, 6 C. C. A. 148.

It results that the judgment must be and is reversed, and the cause remanded to the court below for a new trial.