# Waddell & Walter *versus* Simoson & Wife.

1. A mine boss under the Act of March 3d, 1870, is a fellow servant with a driver boy employed to haul coal from the chambers of the mine.

2. If the operator of an anthracite coal mine has employed a competent person to drive a gangway in said mine, he is not liable for damages for the death of an employee, even though it resulted from the defective construction of said gangway, if he had no knowledge nor notice of said defect.

3. The operator of a coal mine fulfils the measure of his duty to his employees, if he commits his work to careful and skilful bosses and superintendents, who conduct the same to the best of their skill and ability.

April 14th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Luzerne county:* Of January Term, 1886, No. 332.

This was an action on the case by Morris Simoson and Emma O. Simoson, his wife, against Thomas Waddell and J. Frank Walter, doing business as Waddell & Walter, to recover damages for the death of their son, W. T. S. Simoson, caused by the alleged negligence of the said defendants.

Plea, not guilty.

The following are the facts of the case as they appeared on the trial before RICE, P. J.:

In 1882 the then firm of Waddell & Walter were operating certain collieries in Luzerne county, one of which included the mine where the accident occurred by which W. T. S. Simoson, a son of the plaintiff, lost his life. This colliery embraced one mine worked by a shaft, up which the coal was brought to the breaker, and another, worked by a tunnel or drift in the side of the hill; the coal being taken over a trestle to the same breaker. The two mines were entirely distinct and separate and there was no connection between them. James Waddel was the general superintendent of the defendants' collieries; William Wallace was the inside foreman or mining boss of the mine operated by the shaft, and James Gallagher the inside foreman or mining boss of the other mines; John Schlager was the boss of the breaker, through which the coal from both mines passed.

Morris Simoson was an old miner and familiar with the manner and character of mining operations in that vicinity. His son, Wm. T. S. Simoson, was twelve years old in July, 1882; he had worked in the mines before his employment by the defendants. He was employed by them in the last of

July, 1882, as a slate-picker. He was a stout lad, tall for his age, being five feet, one inch in height, weighing about one hundred and ten pounds, and appearing to be fifteen or sixteen years of age. He was afterwards employed to "sprag" the cars at the head of the breaker. After that he applied to Gallagher, the inside foreman at the drift, for a place as driver boy, and such place being then vacant, was given to him. He had previously driven in the other mine. He began driving in the mine in which Gallagher was foreman about October 1st, 1882. On November 3d, 1882, he was killed by a fall of a "slip" or "fault" from the roof of the gangway at the edge of a breast. The negligence complained of was that the gangway—taken in connection with the width of the breasts opening out from it on both sides—was too wide to be safe without artificial supports or "proppings."

All the witnesses agreed that the "slip" or fault in the rock which fell, could not be discovered except by sounding the roof, and that what came down was merely this slip,' which lay in the solid rock that formed the roof, seventeen to eighteen inches in its thickest part and running down to an invisible or "feather edge" at the side of the gangway. This gangway was eight feet high at the lower side and nine at the upper side. It was a counter-gangway, driven across the upper face of the breasts, opened up from a lower gangway, and from it other breasts had been opened and were being opened on the upper side.

It was started by Gallagher, the inside foreman, whose reputation for skill and care was not attacked or questioned.

He regarded it as perfectly safe. He swore that he did not think props were necessary, and that they would not have prevented the coming down of the slip. That he had sounded the roof and found no indications of anything wrong, and that he had taken every method and precaution known to careful and skilful mining to ascertain the condition of the roof, and that he believed it to be entirely safe.

Clinton Opdyke, who was working in the mine, had sounded the roof with Gallagher and found it entirely safe. He had worked in the mine eight years, and in this gangway since it was opened. John Matthews was working a breast near the place where the "slip" fell. He was in his breast at the time of the fall, and was among the first to get to the place. He thought the place perfectly safe. John Welch had driven the gangway at the place of the accident, and within a week of its occurrence was pushing the same gangway further on. He regarded the condition of the roof as safe.

It was proved that about a week or ten days before the accident, there had been a scale or light fall at the place where

[Waddell *v.* Simoson,]

the accident afterwards happened. Gallagher then, with Opdyke, examined the roof and reported to James Waddell, the general superintendent, that it was safe. He testified that nothing had been neglected or omitted to be done which ought to have been done to make the place safe. It was also shown that after the fall of the slip the mine was robbed—that is, more coal taken from the sides and pillars at that place, and that the roof had remained and still remains intact.

The defendant presented, *inter alia*, the following points:

4. There is no sufficient evidence in the case that the construction of the gangway in which the accident happened was either negligent or defective.

Answer. This point is answered in the negative. There is evidence consisting of the opinions of witnesses that it was not properly constructed, that the distances between the supports were too great. The sufficiency of the evidence is for the jury and not for the court. (First assignment of error.)

5. Even if such construction was defective, the defendants having employed a competent person to drive such gangway, and no notice to them, or knowledge on their part of any defect therein being shown, the plaintiffs cannot recover.

Answer. This is also answered in the negative. (Second assignment of error.)

6. Again even if the gangway or adjacent breasts were constructed of too great a width, yet the plaintiffs cannot recover unless the jury finds that the width of such gangway and breasts caused or materially contributed to the accident.

Answer. This was explained upon the argument, and was amended, as we understood the counsel, to read substantially that the width of the gangway, even if too great, is not material, provided this defect, if it be one, did not cause or contribute to the accident. As thus amended, the point is affirmed. As it stands originally it would have to be negatived, because it leaves out another phase of the case to which we have called your attention. (Third assignment of error.)

8. The only negligence claimed by the plaintiffs being that in a gangway and breasts opening thereon, of the size shown by the map of Mr. Hartwell, it was the duty of the defendants to support the roof by timbers or other appliances, and the uncontradicted evidence being that Gallagher, the mining boss in charge, examined the roof, and found it, in his judgment safe without such support, and so reported it to the general superintendent, the defendants are not responsible either for Gallagher's mistake in judgment or failure to discover the defect in the roof, or to guard against it.

Answer. We decline to charge as requested in that point; it is answered in the negative. (Fourth assignment of error.)

[Waddell *v.* Simoson.]

9. That the defendants fulfilled the measure of their duty to their employés if they committed their work to careful and skilful bosses and superintendents who. conducted the same to the best of their skill and ability, and if the jury find from the evidence that such was the case and that the defendants had no notice or knowledge of the defective condition of the gangway at the time of the accident, then if the same was unsafe the plaintiffs cannot recover in this suit.

Answer. We decline to charge as requested in this point. If, however, you find the facts to be as stated by the point, and the defendants had no notice or knowledge of the defective condition of the gangway, or did not have their attention called to it, or would not have known it by the exercise of due care, then they would not be liable. The point needs, however, that qualification—namely, whether or not they ought to have known it by the exercise of due care and prudence. (Fifth assignment of error.)

10. That if the accident can be attributed to negligence or unskilful mining, then under the testimony the want of care was on the part of a co-employé of the deceased, and the plaintiff cannot recover.

Answer. We decline to charge as requested in that point; because in our opinion the facts in the case do not warrant the submission of that point to the jury. (Sixth assignment of error.)

Verdict for the plaintiff in the sum of $1,336.75, and judgment thereon, whereupon the defendants took this writ, assigning for error the answer of the court to their points, as appears above.

*J. V. Darling* and *H. W. Palmer* (*E. P. Darling* with them), for plaintiffs in error.—1. The fundamental error, as we conceive it to be, in the treatment of this case by the court below, was the instruction to the jury that the ·condition of a counter-gangway in a mine was to be regarded as a "structure," which the mine owner or operator was obliged to furnish and maintain in a condition of reasonable safety, as he would a piece of dangerous machinery, such for example as a railroad locomotive, and that for the failure of the mine-boss under the Act of 1870 to support the roof of such gangway by sufficient props or other contrivances, the owner would be liable, even if the mine-boss had done every-·thing that he thought necessary to make the place safe, and had considered the gangway and the roof supports entirely sufficient and safe and had so advised the owner, or operator.

It was admitted that under ordinary circumstances a mine boss was a co-employé of a miner or person employed in the

mine under him. But the distinction was sought to be made that this rule did not apply to an injury resulting from a failure on the part of such mine boss to open or maintain a gangway in such manner as would provide a safe place for the men under him.

The accident was the result either (1) of the negligence of Gallagher, or (2) of a mistake of judgment on his part.

Are the defendants responsible to this plaintiff for either?

That a mining boss, under the Mine Ventilation Act of 1870 is a fellow servant with the miners and laborers, is established in this state beyond question: Lehigh Valley Coal Co. v. Jones, 5 Nor., 433 ; Del. & Hudson Canal Co. v. Carroll, 8 Id., 374 ; Keystone Bridge Co. v. Newberry, 15 Id., 246.

To compare coal mining to the erection of a house or manufacture of a finished machine is, we submit, entirely impossible. In those cases the master may protect himself by purchasing the machinery from a safe and skilled maker, or by having his house built by a careful and skilled contractor, supplied with suitable material: Adesco Oil Co. v. Gilson, 63 Pa. St., 146 ; Walden v. Finch, 70 Id., 460.

But here, the prosecution of mining operations, necessarily conducted by a mining boss, and involving the exercise of his judgment and skill, if regarded as "structures," leaves the mine operator in the position of the guarantor, both of the skill and judgment as well as the care of his mining boss.

That such a construction of the liability of persons engaged in operating anthracite coal mines cannot be supported, is further seen when the character and scope of the employment of the mining boss are looked at.

He is a statutory officer. It is provided by the Mine Ventilation Act of March 3d, 1870, § 8, P. L. Purd., 1180, as follows : " The better to secure the ventilation of every coal mine and colliery and provide for the health and safety of the men employed therein, otherwise and in every respect, the owner or agent, as the case may be, in charge of every coal mine or colliery, shall employ a competent and practical inside overseer, to be called mining boss, who shall keep a careful watch over the ventilating apparatus, over the air-ways, the traveling-ways, the pumps and sumps, the timbering, to see as the miners advance in their excavations that all loose coal, slate or rock overhead is carefully secured against falling," &c.

2. The answer of the court to the defendant's ninth point was error.

The rule as to the liability of the master for defective, dangerous or unfit machinery, appliances, tools or premises, is thus stated by a recent text-writer: " Personal negligence is the gist of the action, and it must therefore appear, to render

the master liable, that he knew, or from the nature of the case ought to have known, of the unfitness of the means of labor furnished to the servant, and that the servant did not know, or could not reasonably be held to have known of the defect. Knowledge on the part of the employer and ignorance on the part of the employé are of the essence of the action; or in other words, the master must be at fault and know of it, and the servant must be free from fault and ignorant of his master's fault, if the action is to lie.    The authorities all state the rule with these qualifications:" Beach on Contr. Negligence, sec. 123.

3. "If any injury befalls an employé by reason of a defect which ordinary inspection and oversight would not, or did not, detect, ordinary care in the premises having been exercised, then the master is not liable:" Beach on Contr. Negligence, sec. 133; Baker *v.* Allegheny Valley R. R. Co., 14 Norris, 211; Sykes *v.* Parker, 99 Pa. St., 468.

*W. H. McCartney* (*George H. Butler* and *Garrick M. Harding* with him), for defendants in error.—
    The well settled law, as we understand it, applicable to cases of this character, may be summed up in three propositions, and these were affirmed by the court below.    To neither of them do our adversaries interpose any dissent.

. The first is, that the general rule of law is that a master who employs a laborer or operative in any particular department of work, is bound to keep and maintain the place where such work is being performed, in such condition that it is reasonably and adequately safe for the performance of such employment.

The second is, that it is the duty of the master not to expose the laborer or operative, while conducting the master's business, to perils or hazards which may be guarded against by proper care and diligence on the master's part.

The third is, that although the liability of the master is not that of a guarantor of the absolute safety of the place in which the laborer or operative is employed, still the master is bound, and it is his duty, to exercise the care which the exigencies and circumstances connected with the employment reasonably require: Hough *v.* Railway Co., 10 Otto, 213; Fuller *v.* Jewett, 80 N. Y., 46; Wharton on Negligence, §§ 211–232; Cone *v.* Del., L. & W. R. R. Co., 81 N. Y., 206; Gibson *v.* Pacific R. R. Co., 46 Mo., 163; Combs *v.* New Bedford R. R. Co., 102 Mass., 572; P. W. & B. R. R. Co. *v.* Keenan, 103 Pa. St., 124; Baker *v.* Allegheny R. R. Co., 95 Id., 211; Patterson *v.* Pittsburgh & Con. R. R. Co., 76 Id., 393; Ford *v.* Fitchburg R. R. Co., 110 Mass., 240; O'Donnell *v.* Allegheny

R. R. Co., 59 Pa. St., 248; Green & Coates St. R. R. Co. v. Bresmer, 1 Out., 103; Tissue v. Balt. & Ohio R. R. Co., 17 W. N. C., 317; Penna. & N. Y. Canal & R. R. Co. v. Leslie, 16 Id., 321.

Such being the law, how, under the proofs of the plaintiffs below, could any different finding be expected, or justified even, at the hands of the jury? That the gangway in question was in an unsafe and dangerous condition, abundant warning had been given. There had been a fall of roof just previous to the occurrence of the fatal accident. Near the very point where the boy, Simoson, was killed a fall had come down on the track. A clearing away followed, but no props or supports were set up to prevent further falls. Death to an employé came at an early day afterwards; and then, for the first time, that gangway was made secure.

Mr. Justice GORDON delivered the opinion of the court, May 10th, 1886.

In the case of the Lehigh Valley Coal Co. v. Jones, 5 Nor., 432, as also in the Delaware & Hudson Coal Co. v. Carroll, 8 Id., 374, it was held by this court that the mining boss is a co-employé with the other workmen engaged in a coal mine, and that, as a consequence, the owners of the mines are not responsible for damages resulting to a fellow workman from his negligence. Without overruling these cases, which in principle are sustained by many others, we cannot see our way clear to adopt the ruling of the court below as to the case in hand. The competency of the defendants' mining boss does not seem to have been questioned; it was but alleged that he was negligent in not having the roof of the gangway properly secured by props or other appliances, which might have prevented the fall of the rock that killed the plaintiffs' son. But that the employer cannot be made responsible for damages resulting to a servant from the negligence of a fellow servant, is a principle as old as the common law. Moreover, as the defendants had complied strictly with the 8th section of the Act of 3d of March, 1870, in providing a practical and skilful inside overseer, or mining boss, and as they had thus fulfilled the duty imposed upon them by the General Assembly, it is not for this or any other court to charge them with an additional obligation. As was said by our brother PAXSON, in the case last cited: "It is too plain for argument that if the defendants have not violated said Act they are not responsible." To this doctrine we must adhere, and the more so that it is just and reasonable. The Act is one of great practical utility to the miner, and lays upon the proprietors of mines all the burthens they ought of right to bear. They must provide capable over-

seers for their works, and they must furnish what, by such overseers, is required for the safety and welfare of the men engaged in those works.   More than this they cannot do, for upon the judgment and skill of these practical agents they must depend quite as much as any of the men who are engaged in their mines.   Bosses, however well intentioned and skilful, cannot always be on the watch ; occasionally they will fail in judgment, and at times may even be negligent ; but of this the workman is quite as well aware as his employer, and in entering upon the employment of mining he must assume the risks that are ordinarily incident thereto, among which are those accidents that may result from the negligence of co-employés, of whom, as we have seen, the mining boss is one.   It follows that the court below should have affirmed without qualification the fifth, ninth and tenth points of the defendants, and as these errors require a radical reversal of the case, we need not notice the remaining assignments.

The judgment is reversed.