## CITY OF MINNEAPOLIS v. LUNDIN.

(Circuit Court of Appeals, Eighth Circuit. October 30, 1893.)

### No. 299.

1. MASTER AND SERVANT—NEGLIGENCE—VICE PRINCIPALS—WHO ARE.
   Where a city engineer, declared by the charter to be the general superintendent of all work done by the city in the streets, appoints a superintendent of sewer construction, to have charge of that department of the work, and the latter employs a foreman, who controls a gang of men, with power to hire and discharge, and direct when, where, and how to work, such foreman is not a general vice principal of the city in relation to a workman under him who is injured by his negligent act. Railroad Co. v. Baugh, 13 Sup. Ct. Rep. 914, and Coal Co. v. Johnson, 56 Fed. Rep. 810, followed.

2. SAME—DEFECTIVE PREMISES—FELLOW SERVANTS.
   The duty of a city to use reasonable care to furnish a safe place for its employes to work in does not extend, in the construction of a sewer, to keeping the same safe at every place and every moment of time in the progress of the work; and if it becomes unsafe, through the omission of a foreman, who is not a vice principal, to inform a workman that a dynamite cartridge has failed to explode, the city is not liable for a resulting injury.

In Error to the Circuit Court of the United States for the District of Minnesota. Reversed.

David F. Simpson, for plaintiff in error.

F. D. Larrabee, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge. The city of Minneapolis, the plaintiff in error, seeks to reverse the judgment against it recovered in the court below by Erick Lundin, the defendant in error, on the ground that the circuit court should have instructed the jury to return a verdict in its favor.

The charter of the city of Minneapolis provides that the city engineer "shall have supervision and general charge of all work done for the city, and all work done in any street, highway or alley in the city; may direct the manner of performing such work, and the construction of all sidewalks, street crossings, bridges or other structures in or upon such streets." Sp. Laws Minn. 1881, c. 76, § 10. One S. W. Sublette was the superintendent of sewer construction for that city under the direction of the city engineer. One John Holdquist was the foreman of a crew of about 50 men engaged in the construction of a sewer on Fourth avenue in that city under the direction of the superintendent, Sublette. This

superintendent gave his directions as to this piece of work to the foreman, and the latter hired and discharged the men in this crew, and directed them where to work and what to do. The members of this crew were all engaged, on the day of the accident, in constructing a sewer along a single block on Fourth avenue. Some of the men were opening the trench, others were laying the pipe, and others were filling the trench behind the pipe-layers. In opening the trench it was necessary to break up the rock found there by blasting it so that it could be removed, and sticks of dynamite about eight inches long were used for this purpose. Erick Lundin was a blaster employed in this crew, and it was his duty to prepare and fire the blasts of dynamite which were used to shatter the rock. He had been engaged in performing this duty for several weeks. Andrew Anderson was another blaster, whose duty it was to prepare blasts for Lundin to fire. This was the method of preparing and firing the blast: After five holes about two feet deep had been drilled near each other by machinery, one of these blasters took charge of these holes, cleaned them out, placed a stick of dynamite in each with a cap and wire attached to it, filled the holes with sand and tamped it down, and connected the wires leading from the dynamite with two larger wires which led to an electric battery some distance away, and when all was ready Erick Lundin fired the blast by the use of the battery. It not infrequently happened that some of the sticks of dynamite would not explode, and that the entire blast would be ineffectual. In that case it was the duty of the blaster who had loaded the holes to clean them out, and reload them. On September 18, 1890, while the workmen we have referred to were in the common employment of the city in the various capacities stated, Anderson prepared one blast, and Lundin prepared another, about 75 feet distant from him, and then fired both of them. Anderson's blast proved ineffectual, and he told the foreman, Holdquist, that "there was four holes went off and the other place didn't go off." Holdquist turned to Lundin, who stood by, but did not hear Anderson's statement that one of the dynamite sticks had not exploded, and told him to get some dynamite, and go down and reload these holes, because they had done no good. Lundin went away some distance, got five sticks of dynamite, and carried them down where Anderson was at work with a pump cleaning out these holes. He cleaned four holes, and Lundin reloaded them. As he was pumping out the fifth he struck a stone, at a depth of about eight inches, too large to come through the pump, and so fast that he could not pull it up without breaking it. Lundin then took a drill, put it in the hole to break the stone, and held it. He did not know that there was unexploded dynamite below the stone, but Anderson was the man who told the foreman that one of the sticks of dynamite had not exploded. Anderson struck the drill with a hammer, the dynamite exploded, and injured Lundin, the defendant in error. The judgment is based on the theory that the foreman, Holdquist, was the vice principal of the city, and that his direction to Lundin

to reload the holes, without telling him that Anderson, who had loaded them, and was about to clean them out, had said that the dynamite in one of them had not exploded, was the careless act that caused the injury. No other negligence is charged against the city.

Prima facie, all persons engaged in a common employment in the service of the same master are fellow servants. At common law, a servant who enters with others upon the common employment in the service of a common master assumes the ordinary risks of that service, including the risk of injury from the negligence of his fellow servants. It is the duty of the master, however, to use ordinary care to furnish reasonably safe machinery and instrumentalities with which the servant may perform his work, and a reasonably safe place in which he may render the service for which he is employed. It is also the duty of the master to use ordinary care to employ fit and careful coworkmen to assist in the common service. These are absolute personal duties of the master, and cannot be so delegated as to relieve him from liability for their negligent discharge.

A vice principal is the representative of the master, and for his acts and negligence the master is responsible. An employe of a corporation may become such a representative in two ways:

First. He may be intrusted with the entire management and supervision of all the business of the corporation, or with the entire management and supervision of a distinct and separate department of its business, and in such a case he may be termed a general vice principal, because in all his acts relative to the business of the corporation he stands in the place of the master, and the latter is liable for his negligence in their performance.

Second. One who has not the authority of a general vice principal may be intrusted by the master with the discharge of absolute personal duties that rest upon it, such as the duty to use reasonable care to employ competent and careful fellow servants, and in such a case he may be termed a special vice principal. He stands in the place of the master when he is discharging one of these personal duties of the master, and the latter is liable for his negligence in the discharge of it; but in the performance of his other services as a general employe he is not the representative of the master, nor is the master liable for his negligence in the performance of them. Whether or not the master is liable for the negligence of such a servant in a given case must be determined by the nature of the duty in the performance of which he was guilty of the negligence. If he was engaged in discharging an absolute duty of the master, the latter is liable; otherwise it is not. Railroad Co. v. Baugh, 13 Sup. Ct. Rep. 914, 919, 921; Coal Co. v. Johnson, 56 Fed. Rep. 810; Brown v. Winona & St. P. R. Co., 27 Minn. 162, 165, 166, 6 N. W. Rep. 484; Brown v. Minneapolis & St. L. Ry. Co., 31 Minn. 553, 18 N. W. Rep. 834.

In our opinion, the two authorities first cited, supra, are decisive of the question here at issue. In the first case it was held that an engineer who, under the rules of a railroad company, was "re-

garded as conductor," and who had the direction and control of his engine and of his fireman upon it, was not a vice principal of the company, and that the latter was not liable for an injury to the fireman, caused by the engineer's negligent disregard of his orders. In the second case this court held that the fact that the foreman of a crew of 10 men had authority to direct them where to work and what to do, and was intrusted with the duty of propping the roof of a room in a mine, and keeping it safe for these workmen who were engaged with him in mining coal, did not make him a general vice principal where his crew was one of several working under the general direction of a pit boss and a general superintendent, but that the liability of the company for his negligence must be determined by the nature of the duty he was performing when he caused the injury.

That the foreman, Holdquist, was not the general representative or vice principal of the city of Minneapolis, this record clearly shows. He was not the general manager or superintendent of its entire business, or of any separate and distinct department of its business. The charter of that city declared that the city engineer should be the general superintendent of all work done for the city in any street, highway, or alley, and gave him full power to fix the time, place, and manner of performing it. The city engineer intrusted the work of that branch of this department which consisted of the construction of sewers to Mr. Sublette, whose very appropriate title was superintendent of sewer construction. Holdquist was the boss of 50 men, with authority to hire and discharge them, engaged in the performance of a single piece of sewer construction under the supervision of this superintendent. All the men employed by the city in the construction of sewers, whatever their grade or authority, were serving the same master in the same common employment and in the same department. No piece of work on any sewer constituted a department of the business of the city separate and distinct from any other work in such construction, and no one of the foremen or laborers below the rank of the superintendent, Sublette, could have been a general representative or vice principal of the city, if, indeed, he was. It follows that in the performance of his general duties of controlling the men in his crew, and directing them when, where, and how to work, Holdquist was a fellow servant of the defendant in error.

It remains to consider whether or not he was a special vice principal when he committed the alleged negligence complained of, whether or not he was then discharging the duties of his employment as foreman in the common service of constructing the sewers, or some absolute and personal duty of the master intrusted to him. It was the absolute duty of the master to use reasonable care to employ ordinarily careful and suitable servants to construct this sewer, and the performance of that duty had been intrusted to this foreman. But it is not claimed that he was negligent in the employment of the man Anderson, who, with knowledge of the dynamite below, struck the fatal blow that caused the injury, or

that he failed in any other respect to carefully discharge this duty of his master.

It was the duty of the master to use reasonable care and diligence to furnish a safe place for the defendant in error to perform his service in, and it is claimed that it was a breach of this duty for the foreman to send him to reload these holes without notifying him that there was dynamite in one of them. But the duty of the master to furnish a safe place for the performance of work does not require it to keep that place safe under the constantly changing conditions which the performance of such a work as the construction of a sewer necessitates. The city furnished a street in which it was safe to construct a sewer. The comparative safety of the place where each man worked was necessarily constantly varied by the progress of the work, and the duty of the master did not extend to keeping every place where each workman labored safe at every moment of its progress. It was the duty of each workman to use reasonable care to so render his service that the place in which he and his fellow servants were required to labor should continue to be reasonably safe. It was the duty of the foreman to so direct the work of excavating, of laying the pipe, and of filling the trench that it would continue to be reasonably safe for every man in his crew to render the service assigned to him. But these were personal duties imposed upon the workmen and the foreman by their employment in the common service, and not by the delegation to them of the performance of any absolute duty of the master. The street originally furnished by the city was safe. The trench in which the rock was to be blasted was originally safe for the blasting of rock. If the safe place originally furnished by the city became unsafe in the progress of the work, it was rendered so not by any negligence of the city or its superintendent in furnishing it, but by the acts or negligence of the foreman and his workmen in discharging the duties imposed upon them by their common employment, and for these acts and this negligence the city was not responsible. Each employe assumed the risk of this negligence of his fellow servants when he entered the common employment. Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. Rep. 433; Bunt v. Mining Co., 138 U. S. 483, 11 Sup. Ct. Rep. 464; Killea v. Faxon, 125 Mass. 485.

The result is that the foreman was not the vice principal of the city, but was the fellow servant of the defendant in error in the performance of the only act of negligence disclosed by the record, and the circuit court should have instructed the jury to return a verdict in favor of the city. Railway Co. v. Davis, 3 C. C. A. 429, 53 Fed. Rep. 61; Gowen v. Harley, 56 Fed. Rep. 973, 980; Monroe v. Insurance Co., 3 C. C. A. 280, 52 Fed. Rep. 777; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U. S. 727, 733, 8 Sup. Ct. Rep. 266; Railway Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. Rep. 569; Railway Co. v. Cox, 145 U. S. 593, 606, 12 Sup. Ct. Rep. 905; Meehan v. Valentine, 145 U. S. 611, 618, 12 Sup. Ct. Rep. 972.

The judgment is reversed, with costs, and the cause remanded, with directions to grant a new trial.