ROLLA vs McALESTER COAL CO.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 141).-

1. *Master and Servant—Contributory Negligence—Instruction.*

When the plaintiff stood in the main slope of a mine while turning a room off of it, it was not error for the court to decide, as a matter of law, that because plaintiff stood in said place while performing said work, that the portion of the slope occupied by him was his working place, in the sense that he was required to inspect it and keep it safe from falling rock for his own protection.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice Wm. H. H. Clayton, July 5, 1904.

Action by Joe Rolla, administrator of Barto Rolla deceased, against the McAlester Coal Mining Company. From a judgment for defendant, plaintiff appeals. Affirmed.

From the transcript of the record it does not appear on what date the original complaint was filed, but on May 6, 1903, defendant filed motion to quash service. On June 6, 1903, the motion to quash was overruled, to which defendant excepted, and other motions were filed and overruled. Venue was changed to Poteau, and by agreement changed back to South McAlester. On July 2, 1904, plaintiff filed amended complaint, and alleges that on October 7, 1902, defendant was operating coal mines at Buck, I. T., among which was a mine known as "Slope No. 2." Plaintiff was employed by defendant, and on said day was at work "in said mine No. 2

slope, in said slope, at a point about 45 feet below the eighth south entry on the north side of said slope, turning a room off of said slope." That it was the duty of defendant to furnish plaintiff a safe place to work, and to properly and safely timber the entries, slopes, and passages of said mine, to carefully and thoroughly inspect the passages, entries, and slopes and working places in said mine, and to remove the slate, rock, or other debris, or timber the same up, and "to notify its employes of dangerous places in said mine, and to manage, control, conduct, and operate said mine so as not to endanger the safety and lives of its servants and employes." That on said day defendant "had carelessly and negligently permitted rock, slate, earth, and other debris to become loose in the roof and top of said slope No. 2 on the north side thereof, about forty-five feet below the eighth south entry, at and near the place where the plaintiff was engaged at work, under which it was necessary for plaintiff to pass in going to and returning from his work, and to remain while performing his work in said mine. The said rock, slate, earth, and other debris had been jarred loose by shots fired by the shot firer of the defendant. That the shots which jarred the said matter loose were fired on or about the 3d day of October, 1902, after plaintiff had left the mine, and the plaintiff did not again return to the said mine until October 7, 1902, the day upon which he was injured. The defendant carelessly and negligently failed to inspect the said slope at said place for loose rock, slate, earth, and other debris, and had carelessly and negligently failed to place timbers under the same, or to remove the same, and defendant carelessly and negligently failed to notify the plaintiff of the said loose rock, slate, earth, and other debris." That by reason of defendant's negligence, while plaintiff was at work at that place in said mine mentioned, loose rock, slate, earth, and other debris fell upon him, wounding, bruising, and injuring him, breaking his leg just above the ankle, injuring him in-

ternally, by reason of which he has suffered great pain and is permanently injured, to his damage $10,000. Defendant files its amended answer, and denies specifically each and every allegation in plaintiff's amended complaint, and, "further answering, defendant says that if plaintiff was injured in its mine on the 7th day of October, 1902, that said injury was due to the negligence and to the contributory negligence on the part of the plaintiff in this, to wit: The plaintiff was opening a room off defendant's slope for the purpose of taking coal therefrom. That plaintiff had mined the coal for some distance from the slope, and had prepared shots, and directed that these shots be exploded by the shot firer in order to loosen coal in said room and to mine the same therefrom. That said shots are so fired by the shot firer, and that thereby the rock over the room in which plaintiff was working and over the slope was loosened and broken, and that thereafter plaintiff began to mine said coal in the room which had been opened by him. That it was plaintiff's duty, before beginning the mining down of the coal in said room, to examine for and determine the result of the shots so fired by the shot firer, and that plaintiff failed so to examine his roof and to determine the result of said shots, but negligently began to mine down his coal and to take away the support of the coal from the roof without proper examination. That if a portion of the roof of the slope at the side of which plaintiff was working did fall, the fall of rock was occasioned by the act of the plaintiff in negligently mining down his coal. That if the plaintiff was injured at the time and place mentioned in his complaint, that such injury occurred while plaintiff was in the act of making a room from which to mine coal. That it was plaintiff's duty to inspect, care for, and protect his working place, and that the plaintiff assumed the risk of such injury while in said employment;" and defendant asks to be discharged, with its costs. The cause was tried before a jury on July 5, 1904. Defendant

files motion to instruct jury to return a verdict for defendant, which is sustained by the court, to which plaintiff excepts, and under instructions of court, to which plaintiff excepted, the jury returned a verdict for defendant, and the court rendered judgment on the verdict. On July 7, 1904, plaintiff filed motion for new trial, which was subsequently overruled, and appealed to this court. On June 13, 1905, there was filed with the clerk of this court notice to appellee and motion to substitute Joe Rolla, as administrator of the estate of Barto Rolla, deceased, as appellant, service of motion waived by counsel for appellee, and on June 14, 1905, said motion was granted by this court.

*J. S. Arnote*, for appellant.

*Stuart & Gordon* and *Guerrier & Kellogg*, for appellee.

TOWNSEND, J. (after stating the facts). The appellant (plaintiff) has filed seven assignments of error, which he discusses under two general heads, as follows: "First, the admissibility of evidence as raised by the first and second assignments of error; and, second, should the cause have been submitted to the jury, as raised by the third, fourth, fifth, sixth, and seventh assignments of error?" The first head discussed the question of allowing certain witnesses to testify. The second head was discussed under two propositions, as follows: "(1) Was it error for the court to decide, as a matter of law, that because appellant stood in the main slope while turning a room off from it, that the portion of the slope occupied by him was his working place, in the sense that he was required to inspect it and keep it safe from falling rock for his own protection? (2) Was there sufficient evidence as to whose duty it was to inspect and timber the main slope at the place where appellant was at work to submit the question to the jury?"

The question of allowing the witnesses referred to under the first head to testify was wholly within the discretion of the court, and is not reversible error.

The two propositions discussed under the second head involve the whole question of the right of plaintiff to recover. It is unquestioned that plaintiff was employed by defendant as a coal miner, and was ordered to turn a room off the slope. He drilled into the coal, and prepared his shots, which were fired by the shot firer. They were not satisfactory, and he drilled more holes, and they were likewise fired. The effect of these seems to have been to crack the coal in all directions. Several days after these shots were fired, plaintiff returned to work. He had taken out several hundred pounds of coal when a piece of rock fell. He jumped back into the slope, and another rock fell, striking him seriously injuring him. The rock fell by reason of taking out the coal that supported it, and would not have fallen if the coal had not been taken out. Was not this contributory negligence on the part of plaintiff, and did he not assume the risk of the accidents which might happen when he undertook the service of turning off this room? What negligence was the defendant guilty of that could support a recovery in this case? It was unquestionably the duty of defendant to keep the slope in good condition, so that employes could pass and repass in safety. But this was the place where the plaintiff was at work, and was it not plaintiff's duty to take care of his own working place, and to do such things as were necessary to keep it safe for his purposes?

The defendant has pleaded two defenses to this action—contributory negligence and assumption of risk. Judge Sanborn, in Finalyson vs Utica M. & M. Co., 32 U. S. App., at page 147, 14 C. C. A. 494, 67 Fed. 510, says: "It is the general

rule that it is the duty of the master to exercise ordinary care to provide a reasonably safe place in which the servant may perform his service. Railway Co. vs Jarvi, 53 Fed. 65, 3 C. C. A. 433, 10 U. S. App. 439. But this rule cannot be justly applied to cases in which the very work the servants are employed to do consists in making a dangerous place safe, or in constantly changing the character of the place for safety as the work progresses. The duty of the master does not extend to keeping such a place safe at every moment of time as the work progresses. The servant assumes the ordinary risks and dangers of his employment that are known to him, and those that might be known to him by the exercise of ordinary care and foresight. When he engages in the work of making a place that is known to be dangerous safe, or in a work that in its progress necessarily changes the character for safety of the place in which it is performed as the work progresses, the hazard of the dangerous place and the increased hazard of the place made dangerous by the work are the ordinary and known dangers of such a place, and by his acceptance of the employment the servant necessarily assumes them. Armour vs Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440; City of Minneapolis vs Lundin, 58 Fed. 525, 529, 7 C. C. A. 344, 19 U. S. App. 245; Railway Co. vs Jackson, 12 C. C. A. 507, 65 Fed. 48." In Minneapolis vs Lundin, 19 U. S. App. 245, 58 Fed. 525, 7 C. C. A. 344, the same doctrine is stated: "But the duty of the master to furnish a safe place for the performance of work does not require it to keep that place safe under the constantly changing conditions which the performance of such a work as the construction of a sewer necessitates." Bailey on Personal Injuries, vol. 2, § 3023, says: "The duty of a master to exercise ordinary care in providing his servants with a reasonably safe place to work does not require him to provide a safe place in cases where the very work upon which the servant is engaged is of a nature to make

the place where it is done temporarily insecure; but in such case the servant assumes the increased hazard." In Consolidated Coal & Mining Co. vs Floyd, Adm'r (Ohio) 38 N. E. 610, 25 L. R. A. 848, the court says: "Here the place was not furnished as in any sense a permanent place of work, but was a place in which surrounding conditions were constantly changing, and, instead of being a place furnished by the master for the employes, within the spirit of the decisions referred to, was a place the furnishing and preparation of which was in itself part of the work which they were employed to perform. The distinction is shown in a number of cases, among which may be cited the Fraser vs Red River Lumber Co., 45 Minn. 235, 47 N. W. 785, McGinty vs Athol Reservoir Co., 155 Mass. 183, 29 N. E. 510, and St. Louis Consol. Coal Co. vs Scheller, 42 Ill. App. 619. See, also, Hall vs Johnson, 3 Hurl. & C. 589; Waddell vs Simoson,. 112 Pa. 567, 4 Atl. 725." The Supreme Court of Michigan, in Petaja. vs Aurora Iron Mining Co., 64 N. W. 335, 32 L. R. A. 435, 58 Am. St. Rep. 505, says: "In view of the cases of Schroeder vs Flint & P. M. R. Co., 103 Mich. 213, 61 N. W. 663, 29 L. R. A. 321, 50 Am. St. Rep. 354, and Beesley vs F. W. Wheeler & Co., 103 Mich. 196, 61 N. W. 658, 27 L. R. A. 266, cited in the former opinion, there is no doubt that a master must furnish a reasonably safe place for a servant to work, if a structure is required for the carrying on of his business; and the briefs furnished in this case upon the part of the plaintiff would render us more assistance had they called our attention to cases establishing the claim that a master is obliged to make safe the place which the servant makes and occupies as a means of doing his work, or which results as an incident of the work, although it necessitates his presence in a place to a greater or less degree unsafe. In such cases must the master stay with or follow up the servants, to be certain that they make the place safe, so that they, or some of them, be not injured? There are many cases which

draw the distinction pointed out." To the same effect is Christienson vs Railway Co. (Utah) 74 Pac. 876. Labatt on Master and Servant, vol. 2, § 587, says: "Merely transitory perils, master not bound to protect the servant against.—A form of expression which is often met with in recent cases, particularly in Massachusetts, is that there can be no recovery where the danger to which the plaintiff was exposed was merely a transitory one, existing only on the single occasion when the injury was sustained, and due to no fault of plan or construction or lack of repair, and to no permanent defect or want of safety in the defendant's works, or in the manner in which they had been ordinarily used. Or, as the rule has also been enunciated, 'the absolute obligation of an employer to see that due care is used to provide safe appliances for his workmen is not extended to all the passing risks which arise from short-lived causes.' " And in section 588: "Dangers caused by the progress of the work, master not bound to protect servant against.—One special application of the general conception underlying the rule stated in the preceding section is that, where the work is of such character that, as it progresses, the environment of the servant must necessarily undergo frequent changes, the master is not bound to protect the servants engaged in it against the dangers resulting from those changes. The cases in which this principle is most usually applied are those involving the various kinds of construction work. It should be observed that in some cases of this class the element of a fellow servant's negligence is not involved at all, and recovery is denied on the broad ground that there is no breach of duty on the master's part." Finalyson vs Utica M. & N. Co., 32 U. S. App. 143, 67 Fed. 607, 14 C. C. A. 492; Minneapolis vs Lundin, 19 U. S. App. 245, 58 Fed. 525, 7 C. C. A. 344; Bailey on Personal Injuries, vol. 2, § 3023; Consol. Coal & M. Co. vs Jno. M. Floyd, Adm'r (Ohio) 38 N. E. 610, 25 L. R. A. 848; Petaja vs Aurora Iron M. Co., 64 N. W. 335, 32 L. R. A. 439,

58 Am. St. Rep. 505; Christienson vs Rio Grande W. Ry. (Utah) 74 Pac. 876; Labatt on Master and Servant, vol. 2, §§ 587, 588.

The law is conclusive against the plaintiff in this case, and the court below did what the law required in directing a verdict for defendant, and his judgment is affirmed.

GILL, C. J., and LAWRENCE, J., concur.