## MISSOURI VALLEY BRIDGE & IRON CO. v. WALQUIST.

(Circuit Court of Appeals, Eighth Circuit.   May 14, 1917.)

No. 4553.

1. MASTER AND SERVANT ☞265(3)—INJURIES TO SERVANT—BURDEN OF PROOF.
   A widow, suing her husband's employer to recover damages, on account of his death, has the burden of showing that the employer was guilty of negligence or breach of duty which was the proximate cause of the injury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 879, 897.]

2. MASTER AND SERVANT ☞101, 102(8), 229—INJURIES TO SERVANT—DUTY OF MASTER—PROVISION—DUTY OF SERVANT—OPERATION.
   The duty of the master is one of original construction or provision. The duty of the servant is one of operation. It is the duty of the master to exercise ordinary care to furnish to its servant a reasonably safe place in which to work and to exercise ordinary care to furnish him with reasonably safe appliances with which to work. It is the duty of the servants to exercise ordinary care to guard themselves and their fellow servants against the risk and danger that the reasonably safe place or reasonably safe appliances provided by the master may become dangerous by the negligent use of them, or the negligent operation of the work by themselves or their fellow servants. The master is not liable for injuries to a servant caused by his failure or the failure of his fellow servants to discharge this duty. The servant assumes the risk of the negligence of his fellow servants in the performance of their duty of operation of the work and use, the place and appliances provided by the master, including the risk and danger of the negligence of his superior, be he foreman, superintendent, or other, in the discharge of his duty of directing the conduct and operation of the work in hand and the use of and place and appliances provided. In the discharge of that duty the superior servant is the fellow servant of the subordinate servant who is subject to his orders.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 173, 674, 683.]

3. MASTER AND SERVANT ☞103(1)—INJURIES TO SERVANT.
   A master cannot, by delegation, escape liability for breach of his duty to exercise ordinary care to furnish employés with reasonably safe appliances and a reasonably safe place of work.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175.]

4. MASTER AND SERVANT ☞162—INJURIES TO SERVANT—LIABILITY OF MASTER.
   While a master must exercise ordinary care to furnish his servants with a reasonably safe place of work and reasonably safe appliances, he is not bound to guard his servants against risk and danger resulting from the negligence of fellow servants, or superior fellow servants, such as a foreman or superintendent; the servant assuming such risks.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 327.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MASTER AND SERVANT &275(3)—INJURIES TO SERVANT—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action for the death of an employé, evidence *held* insufficient to show that the employer was negligent, either in failing to furnish a reasonably safe place of work, or reasonably safe appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 958.]

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by Alice Walquist against the Missouri Valley Bridge & Iron Company, a corporation. There was a judgment for plaintiff, and defendant brings error. Reversed, and remanded for new trial.

Battle McCardle, of Kansas City, Mo. (Frank L. Barry, of Kansas City, Mo., on the brief), for plaintiff in error.

John H. McVay, of Kansas City, Mo. (S. D. Murphy, of Kansas City, Mo., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and REED and BOOTH, District Judges.

SANBORN, Circuit Judge. This is an action brought by Mrs. Alice Walquist for damages resulting to her, as she avers, from the negligence of the Missouri Valley Bridge & Iron Company, which she avers caused an injury to her husband, John Walquist, that resulted in his death. The trial resulted in a judgment against the company for $5,000. At the close of the testimony the court denied a motion of the company to direct the jury to return a verdict for the defendant, on the ground that there was no substantial evidence of any causal negligence of the company, and this ruling is one of the alleged errors upon which the company relies for a reversal of the judgment.

Most of the material facts of the case were established without conflict in the testimony, and among them these: The company was engaged in constructing the piers of a bridge across the river at Hannibal, Mo., and Mr. Walquist, who was a carpenter, was one of its employés, and had been such for several weeks. At the time of his injury he was one of a gang of five or six men, of which Henry F. Olson was the foreman, which was engaged in constructing an ice breaker to protect one of the concrete piers against the ice that forms on, and when the ice breaks up floats down, the river. This breaker was about 100 feet long from north to south and 35 feet wide at its base, but its northern end or nose was in the form of the letter "V." The foundation of this breaker had been filled with rocks, and this gang of men was building a superstructure of timbers, which it had raised from 6 to 13 feet above these rocks. On the northeast side of the nose of the ice breaker lay a barge, which carried a derrick, a boom, and an engine to operate the boom. Just south of the barge lay another barge, which was loaded with timbers to be used in the ice breaker, and the gang was taking these timbers from the barge by the use of the engine and the boom, putting them in place in the ice breaker, and fastening them there. A cable which dropped from the outer end of the boom was fastened to each timber in turn, and the timber was then raised in the usual

way to the requisite height by the operation of the engine, the boom was swung by the power of the engine by means of two lines, one on each of two revolvable spools or spindles, commonly called "nigger heads." One of these lines was attached to one side of the boom, and ran through a block at one end of the barge, and the other was attached to the other side of the boom, and ran through a block at the other end of the barge. These nigger heads were operated by Ed Jones, who by manipulating them and signaling to the engineer could tighten one line and slacken the other, and in that way could swing the boom either way, could control the direction and speed of its movements, hold it steady, and stop it over any point where a timber was to be placed, so that the engineer could then lower it into its destination. This work of removing these timbers from the barge and placing them on or in the ice breaker had been proceeding in this way for days. When a timber was to be placed, two of the gang, one at the place where one end of the timber was to lie, and the other at the place where the other end was to lie, took those places respectively, caught the timber when it was swung above its destination, and as it was lowered handled and located it in its proper place. The day before the accident Walquist was one of these two men, and worked at handling and placing the timbers. Olson was the foreman of the gang, and the other members of the gang were subject to his orders in the performance of this work. At the time of the injury Ed Jones operated the nigger heads, Perkins operated the engine, Hull handled and placed one of the ends of the timbers, and Walquist was either handling and placing the other ends of them, or he was boring a hole for a bolt with a power auger a few feet from the place where the timber was to be located, when that timber, which had been taken from the barge, raised 3½ feet above the ice breaker, and swung towards its destined place thereon, struck him and pushed him off the timber on which he stood, upon the rocks, from 6 to 13 feet below. At this time the witness Light was boring a hole with the motor auger within .3 feet of Walquist on the ice breaker. Within 50 feet of him were Hull, who stood at the place where one end of the timber was to be placed, Light, who was boring a hole within 3 feet of him, Youell, who was driving bolts, and Olson the foreman; and on the barge which carried the derrick were Jones, who saw the accident from his station, and Perkins, the engineer, who did not witness it.

The facts which have now been recited were established without conflict in the testimony. There was, however, a conflict in the evidence between the testimony of Mr. John Crimley, the only witness for the plaintiff relative to the happening of the accident, and the other witnesses, regarding the following facts: Mr. Crimley testified that he was on the ice breaker, handling and placing one end of each of the timbers. Hull, who handled one end of the timbers, Light, who was boring a hole within 3 feet of the place for the other end, and Olson, the foreman, testified that Crimley was not on the ice breaker at the time of the accident, and that Walquist was handling the other end of the timbers with Hull, and Youell testified that he did not see Crimley there at all. Crimley testified that at the time of the accident Walquist was boring a hole with the motor auger. Hull, Light, Olson, Jones,

and Youell testified that Walquist was not boring holes; that he was handling and placing one end of each of the timbers, while Hull placed the other end; and that he stood at the place where the opposite end of the timber from Hull's end was to be placed, and his work was to catch and place the timber as it was swung to him, and Jones, Youell, and Olson testified that Walquist never bored any holes with the motor auger. There was undisputed testimony that the auger was heavy, that it weighed 10 to 12 pounds, that, if the operator let go of it, it would fall and break, and that no auger fell or broke at the time of Walquist's injury. Crimley testified that the timber was 32 feet long and was to be put in a certain place. Olson, Hull, and Youell testified that it was only 12 or 14 feet in length, and that it was to be put in a different place from that specified by Crimley. Crimley testified that the timber was swung to its place with unusual force and rapidity, and that no notice or warning of its approach was given to Walquist. Hull, who handled one end of it, testified that the timber came slowly, gradually, as they usually swung; that Walquist was standing there to catch hold of the timber and land it; that the timber came with a safe speed, with just the slow customary speed, but Walquist was talking to some man and paying no attention to his work, and Hull called, "Look out!" and the timber knocked Walquist over. Olson and Jones testified that the timber was moving slowly in the usual way, and that they used the same appliances and operated them in the same way as they had been doing during the days past. Crimley testified that it was the custom to use a guide rope or line on a timber when raising it with a derrick, in order to prevent its circling or twisting, and that when, on raising it, it circles or twists, it is customary to let it down again, and then raise it again slowly. Jones, Youell, Light, Olson, and Hull testified that the lines attached to the sides of the boom operated by Jones by means of the nigger heads and the engine controlled the movement, speed and steadiness of the swing of the boom, and Olson, Light, and Hull testified that where the movement of the boom was controlled in that way, and the operation was in an open space, away from buildings or such obstructions, a guide rope or line attached to the timber was not usually used, and that they had never seen one so used, and there was no custom to use it.

[1] The burden was on the plaintiff to prove that the Bridge Company was guilty of negligence or breach of duty which was the proximate cause of the injury to Walquist. The rules of law by which the question of law this case presents must be answered are:

[2-4] It is the duty of the employer to exercise ordinary care to furnish to its employé a reasonably safe place in which to work, and to exercise ordinary care to furnish him with reasonably safe appliances with which to perform his work, and this duty may not be so delegated by him that he may escape liability for its breach.

It is not, however, the duty of the employer to guard his employé against the risk and danger that a reasonably safe place it furnishes, or reasonably safe appliances it provides, may become dangerous by the negligent use of them by the latter's fellow employés, or by the negligence of his superior fellow servant, his foreman or superintendent, in the performance of the latter's duty of directing his sub-

ordinate fellow employés in the performance of the work in which they are engaged. It is the duty of the employer to exercise reasonable care to provide place and appliances, but it is the duty of the employés to exercise reasonable care so to use the place and appliances furnished that their use shall inflict no injury upon them. The duty of the employer is one of original construction and provision. The duty of the employé is one of operation. The employé assumes the ordinary risks and dangers of his employment, and among these the risks and dangers of the negligence of his fellow servants in the performance of the work including the risk and danger of the negligence of his superior, be he foreman or superintendent, who in his direction or failure to direct the operation of the work is his fellow servant. Weeks v. Scharer, 111 Fed. 330, 335, 49 C. C. A. 372, 377; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Gulf Transit Co. v. Grande, 222 Fed. 817, 819, 820, 138 C. C. A. 243, 245, 246; Northern Pac. Ry. Co. v. Hambly, 154 U. S. 349, 359, 14 Sup. Ct. 983, 38 L. Ed. 1009; Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181; City of Minneapolis v. Lundin, 58 Fed. 525, 527, 7 C. C. A. 344, 346; American Bridge Co. v. Seeds, 144 Fed. 605, 611, 612, 75 C. C. A. 407, 413, 414, 11 L. R. A. (N. S.) 1041; Wood v. Potlatch Lumber Co., 213 Fed. 591, 593, 594, 130 C. C. A. 171. "The true idea," said Judge Brewer, "is that the place and the instruments must in themselves be safe, for this is what the master's duty fairly compels, and not that the master must see that no negligent handling by an employé of the machinery shall create danger." Howard v. Denver & Rio Grande Ry. Co. (C. C.) 26 Fed. 837, 842.

[5] No substantial evidence has been discovered in this case that the Bridge Company failed to exercise ordinary care to furnish a reasonably safe place in which to construct this ice breaker, or that it failed to exercise ordinary care to furnish reasonably safe machinery and appliances with which to handle the timbers and build the structure. The nearest possible approach to any such evidence is Crimley's testimony that it was the custom, in raising timbers with a derrick, to use a line attached to the timber to prevent the whirling or twisting of the timber when it was raised, and that such line was not used on the timber which struck Walquist. It is possible that an inference might be drawn from this testimony that the Bridge Company furnished no snub line, or material to make a snub line, which the employés could use. But, even if that inference be indulged, this evidence falls far short of substantial evidence of negligence that was the proximate cause of the injury: (1) Because there is no evidence in the case that the failure to furnish, or even to use, such a line, caused, or probably caused, the injury, for the testimony of the plaintiff's witness is not that the injury was caused by the whirling or twisting of the timber when it was raised, but it is that it was caused by too forcible and rapid a swinging of the boom, a movement of operation, not of provision, which, if it occurred, was caused by the negligence of Walquist's fellow servant, the foreman, Olson, in his direction of the operation, or of the other fellow servants of Walquist, for which the Bridge Company is not liable. All the other acts or omissions of

which there is any testimony, and of which the plaintiff complains, such as the failure to raise the timber to a sufficient height, the failure to give Walquist warning of its approach, the failure to station a person near him to inform him of its movements, were acts or omissions in the operation of the work for which the foreman or the other fellow servants of Mr. Walquist were responsible, and the Bridge Company was not. The conclusion is that there was no substantial evidence in this case of any causal negligence of the Bridge Company, and the court should have instructed the jury to return a verdict in its favor.

Counsel for the plaintiff below cite Kreigh v. Westinghouse & Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984, in opposition to this conclusion. The citation does not appear to be helpful to them. In that case the employer furnished a derrick with only one guide rope, which was attached to the end of the boom, so that when the rope was slack the boom could not be steadied or controlled. To prove that the defendant did not exercise reasonable care to furnish a reasonably safe boom, the plaintiff introduced testimony that the usual method of constructing such booms was to provide them with two ropes, one attached on either side of the boom, to be used to haul it back and forth, and for the purpose of steadying its operation, the very method of construction of the boom furnished by the Bridge Company in the case at bar, and the court held that this testimony presented the question for the jury whether the failure of Westinghouse & Co. to furnish such a derrick and boom as the Bridge Company provided in this case was not negligence; and the court in that case, after stating the rule that an employé may assume, in the absence of notice, that reasonable care has been exercised by the employer in furnishing appliances requisite to carry on the business, set forth the principle that is decisive of the case at bar, in these words:

"But, while this duty is imposed upon the master, and he cannot delegate it to another and escape liability on his part, nevertheless the master is not held responsible for injuries resulting from the place becoming unsafe through the negligence of the workmen in the manner of carrying on the work, where he, the, master, has discharged his primary duty of providing a reasonably safe appliance and place for his employés to carry on the work, nor is he obliged to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servant and his fellow workmen. Armour v. Hahn, 111 U. S. 313 [4 Sup. Ct. 433, 28 L. Ed. 440]; Perry v. Rogers, 157 N. Y. 251 [51 N. E. 1021]." Kreigh v. Westinghouse & Co., 214 U. S. 249, 256, 29 Sup. Ct. 619, 622 [53 L. Ed. 984].

There are other assignments of alleged errors; but as, if errors were made, the questions of law to which they refer are not likely to arise upon a second trial of this case, their discussion is omitted.

Let the judgment below be reversed, and let the case be remanded to the court below for a new trial.